Shantel PARKER, a minor, and Richard
A. Parker, Plaintiffs and
Appellants,

v.

David DODGION, Ph.D., and Associated
Clinical & Counseling Psychologists,
and Family Abuse Center for Treatment,
Utah corporations, Defendants and Ap-
pellees.

No. 970265.

Supreme Court of Utah.

Dec. 8, 1998.

Franklin Richard Brussow, Salt Lake City,
for plaintiffs.

Richard A. Van Wagoner, Salt Lake City,
for defendants.

ZIMMERMAN, Justice:

This case arises out of a custody and visita-
tion battle between Richard Parker and his
ex-wife, Stacey Derum Deardorff, over their
child Shantel. Plaintiffs Richard and Shantel
Parker filed suit against Dr. David Dodgion,
a psychologist, and two corporations with
whom he is associated in connection with
Dodgion's role as a court-appointed evaluator
in the underlying custody battle. Parker
contended in his complaint that Dodgion's
negligence and breach of contract injured
him and his daughter in numerous and varied
ways. Dodgion moved to dismiss or in the
alternative for summary judgment, arguing:
(i) defendants were entitled to judicial immu-
nity; (ii) Parker failed to allege any legal
basis for his attempt to bring the claims on
behalf of Shantel; (iii) the applicable statute
of limitations bars the claim; and (iv) defen-
dants owed no duty to plaintiffs. The trial
court treated the motion as one for summary
judgment, granted it on all of the above
grounds, and dismissed Parker's claims with
prejudice and upon the merits. We affirm
on the ground that defendants are entitled to
quasi-judicial immunity.

We set forth the facts before proceeding to
the standard of review and our analysis. In

reviewing a grant of summary judgment, we consider the facts in the light most favorable to the nonmoving party, here the appellants. *See Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). The relevant facts are as follows.[1] Richard Parker is Shantel Parker's natural father. Shantel's natural mother is Stacey Derum Deardorff. Parker and Deardorff were involved in a continuing custody and visitation dispute concerning Shantel, during which Deardorff accused Parker of sexually abusing Shantel. On September 14, 1993, the court in which the custody dispute was taking place appointed Dodgion to perform psychological evaluations of the parties and of Deardorff's husband, to provide the court with a report of his findings, and to make recommendations as to what custody arrangements would be in Shantel's best interest. Both Parker and Deardorff stipulated to Dodgion's appointment.

Dodgion conducted his evaluations and submitted his recommendations to the trial court on December 12, 1993. Although never explicitly stated anywhere in Parker's submissions to this court, Dodgion apparently recommended that Parker not be given custody or visitation of Shantel because Parker fit the profile of a sexual abuser. After a lengthy trial in which Parker was forced to refute Dodgion's evaluation and recommendations, physical custody of Shantel was awarded to Deardorff, while Parker obtained full, unsupervised visitation.

On July 11, 1996, Parker filed his complaint in the instant case, alleging that as a result of Dodgion's negligent evaluation he suffered various injuries, including monetary damages, loss of custody of Shantel, and emotional distress. Parker also contends that as a part of Dodgion's evaluation he negligently administered both the Minnesota Multi–Phasic Personality Inventory and a penile plethysmograph.[2] Parker alleges that

because Dodgion administered the tests negligently Parker was mistakenly taken to fit the profile of a sexual abuser and, as a result, he was forced to retain two other experts to testify at trial to refute Dodgion's conclusions.

In addition to the claims asserted on his own behalf, Parker attempted to assert a claim on behalf of Shantel, alleging that Dodgion's negligence caused Shantel the loss of unsupervised visitation with Parker during the time the custody and visitation battle was taking place and, as a result, she has suffered various injuries, including an altered perception of her father, loss of trust in adults, separation anxiety, and loss of confidence in her own ability to correctly perceive reality.

On July 31, 1996, Dodgion moved for dismissal or in the alternative for summary judgment. On November 21, 1996, Parker filed a response to that motion.[3] On February 24, 1997, the trial court, in a minute entry, granted defendants' motion, treating it as a motion for summary judgment because Parker introduced matters outside of the pleadings. On May 7, 1997, the trial court entered its final order, dismissing Parker's claims with prejudice and upon the merits.

We first state the standard of review. "Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Higgins*, 855 P.2d at 235. Because the question of whether summary judgment is appropriate is a question of law, we accord no deference to the trial court. *See id.* Furthermore, "we may affirm a grant of summary judgment on any ground available to the trial court." *Id.*

 We begin our analysis with the issue of Dodgion's immunity. If Dodgion is immune from suit, there is no need to ad-

---

1. Because Parker's brief fails to conform to the Utah Rules of Appellate Procedure and does not contain citations to the record in its statement of facts, we rely largely on appellees' brief for its statement of facts.

2. The penile plethysmograph, or arousal test, measures the subject's sexual arousal in response to different forms of sexual stimuli including explicit photographs and audio tapes.

3. That response did not conform to rule 4–501 of the Utah Code of Judicial Administration. *See* Utah Code of Judicial Admin. Rule 4–501(2)(B). Parker's memorandum of points and authorities in opposition to Dodgion's motion set forth no disputed facts and contained no numbered sentences or citations to the record.

dress the other grounds upon which summary judgment was granted. It is a well-established principle of the common law that judges are immune from suit "for actions taken in their judicial capacities, except when those actions have been taken in the absence of subject matter jurisdiction." *Bailey v. Utah State Bar*, 846 P.2d 1278, 1280 (Utah 1993). In *Bailey*, we further held that the Utah State Bar was entitled to immunity when "acting within the scope of its delegated judicial functions." *Id.* at 1281. In so holding, we stated:

> Whether a person or entity should be afforded judicial immunity depends upon the specific work or function performed. If the acts were committed "in the performance of an integral part of the judicial process," the policies underlying judicial immunity apply and immunity should be granted.

*Id.* at 1280 (internal citations omitted) (quoting *Robichaud v. Ronan*, 351 F.2d 533, 536 (9th Cir.1965)). Thus, "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *see also Awai v. Kotin*, 872 P.2d 1332, 1334–35 (Colo.Ct.App.1993). Furthermore, "[b]ecause absolute immunity derives, not from formal association with the judicial process, but from the need to protect functions intimately related and essential to the judicial decision-making process, its protections may extend to some but not all acts performed by those associated with the judicial process." *Awai*, 872 P.2d at 1334. For example,

> immunity is not established merely because a court appointee performed acts within the scope of [a] court's order. While performing acts within the scope of [a] court's order may in some circumstances be necessary to establish immunity, it is not sufficient.... [I]t is still necessary to establish that the acts performed

were intimately related and essential to the judicial decision-making process.

*Id.* at 1335–36.

▇ The question we must answer, then, is whether a psychologist, appointed by the court to assist it in making a custody determination, performs a function integral to the judicial process. In applying the functional approach to determining immunity questions, "[t]he question is whether the activities undertaken by the party are 'functions to which the reasons for absolute immunity apply with full force.'" *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex.Ct.App.1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

When a court appoints a psychologist to assist it in making a custody determination, the court is depending upon that individual to exercise discretionary judgment to render an evaluation and make a recommendation. The exercise of discretionary judgment is a hallmark of a position functionally comparable to that of a judge. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) ("When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as part of their function."). Furthermore, in conducting such evaluations, the psychologist is essentially acting as a neutral fact-finder for the court. Fact-finding is an integral part of the judicial process and a function naturally associated with judges and juries, both of whom are granted immunity from suit.

▇ In addition, courts that have addressed this issue have uniformly held that psychologists appointed by the court to conduct psychological evaluations of parties involved in custody disputes perform a function integral to the judicial process and are therefore immune from suit.[4] Several reasons

4. *See Williams v. Rappeport*, 699 F.Supp. 501, 508 (D.Md.1988); *Lythgoe v. Guinn*, 884 P.2d 1085, 1093 (Alaska 1994); *Lavit v. Superior Ct.*, 173 Ariz. 96, 839 P.2d 1141, 1146 (Ariz.Ct.App. 1992); *Howard v. Drapkin*, 222 Cal.App.3d 843, 271 Cal.Rptr. 893, 905 (1990); *Awai v. Kotin*, 872 P.2d 1332, 1336 (Colo.Ct.App.1993); *S.T.J.*

*v. P.M.*, 556 So.2d 244, 248 (La.Ct.App.1990); *LaLonde v. Eissner*, 405 Mass. 207, 539 N.E.2d 538, 542 (Mass.1989); *Duff v. Lewis*, 114 Nev. 564, 958 P.2d 82, 87 (Nev.1998); *Delcourt v. Silverman*, 919 S.W.2d 777, 783 (Tex.Ct.App. 1996).

support this conclusion. First, if these individuals are subject to suit, they will be much less willing to serve the court in such a capacity. Second, a psychologist who agrees to fill the role of court-appointed evaluator will be less likely to offer the disinterested, objective opinion the court seeks in making such an appointment if he or she is subject to suit. In light of the foregoing, we conclude that the functions served by court-appointed psychologists conducting evaluations and making recommendations regarding custody are integral to the judicial process. Therefore, such individuals are entitled to quasi-judicial immunity.[5]

 Applying these principles to the facts of this case, we conclude that Dodgion is entitled to immunity from suit. The terms of the court order clearly state that Dodgion was to provide evaluations of Parker, Derum–Deardorff and her husband, and Shantel. He was then to provide a report and make a recommendation. All of the actions about which Parker complains were taken by Dodgion in an effort to satisfy his court-appointed duties. This is true even of the plethysmograph test.[6] Thus, even if Dodgion was in fact negligent in the way he conducted his court-appointed duties, he is nonetheless entitled to immunity.

Finally, although Parker may not be able to sue Dodgion for negligence, this does not mean he has been completely deprived of a remedy. "[A]dequate remedies and safe-

guards, other than civil liability, exist to hold court-appointed experts accountable for their actions." *Lythgoe v. Guinn*, 884 P.2d 1085, 1091 (Alaska 1994). For example, where a court-appointed psychologist testifies, or where a report is presented to the court, "the complaining party has the opportunity to examine the expert and bring to the judge's attention any alleged deficiencies in the evaluation." *Id.* These deficiencies could include the scientific reliability of a particular test or irregularities in a test's administration. The complaining party is also free to present his own expert testimony to refute the conclusions of the court-appointed evaluator, as Parker apparently did in this case. Finally, there is always the remedy of appellate review.

In light of the foregoing, the decision of the district court is affirmed.

Chief Justice HOWE, Associate Chief Justice DURHAM, and Justice RUSSON concur in Justice ZIMMERMAN's opinion.

Justice STEWART does not participate herein.

---

**5.** Parker's argument that such a grant of immunity violates the open courts clause of article I, section 11 of the Utah Constitution is unconvincing. His argument completely fails to address our open courts clause jurisprudence and fails to explain how judicial immunity violates that clause except by setting forth broad unsupported assertions regarding the right to a remedy. Therefore, we do not address this argument except to say that we disagree.

**6.** We recognize that there is a dispute in the scientific community as to the use of the penile plethysmograph for diagnostic purposes. *See Berthiaume v. Caron*, 142 F.3d 12, 17 (1st Cir. 1998); *United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir.1995). More specifically, although the plethysmograph is apparently useful in the treatment of diagnosed sex offenders, its usefulness for screening purposes has not been definitively resolved in the scientific communi-

ty, apparently because of a large number of false negatives—passing as normal persons who are actually pedophiles. *See Berthiaume*, 142 F.3d at 17; *Powers*, 59 F.3d at 1471. Nonetheless, although it is unclear whether the results of such a test would survive a *Rimmasch* challenge, we cannot say as a matter of law that the use of such a test falls outside the scope of procedures that might legitimately be used in conducting an evaluation such as the one at issue in the instant case. *See State v. Rimmasch*, 775 P.2d 388 (Utah 1989). Thus, although the plethysmograph is extremely intrusive and would strike many people as unpleasant, embarrassing, and offensive, its use also illustrates why immunity is necessary—psychologists must be free to use their discretion to perform diagnostically appropriate tests without fear of liability even if such tests cause their subjects embarrassment or discomfort.