**BARYAK, Appellant,**

v.

**KIRKLAND et al., Appellees.**

[Cite as *Baryak v. Kirkland* (2000), 137 Ohio App.3d 704.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 99–T–0073.

Decided May 30, 2000.

*Alan Belkin Co., L.P.A.,* and *Alan Belkin,* for appellant.

*Reminger & Reminger Co., L.P.A.,* and *Nick C. Tomino,* for appellees.

CHRISTLEY, Judge.

This is an accelerated appeal taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, John Baryak, appeals from the trial court's dismissal of his action for malicious criminal prosecution through summary judgment.[1]

The facts giving rise to the instant appeal are as follows. On April 19, 1996, a small column appeared in the "Weekly Almanac" section of a local newspaper called the *Weekly Villager.* The item purported to be a wedding announcement describing the April 12, 1996 nuptials between a man named Richard Swartz and a woman named Cathy Brasko. It named the members of the wedding party, described the participants' attire, and stated that the happy couple would be residing in Pebble Beach, California, following a honeymoon trip to Augusta, Georgia.

At the time the wedding announcement appeared, Richard Schwartz ("Schwartz") was the Law Director of the city of Newton Falls, Ohio. In this capacity, Schwartz advised the members of the city council on all legal matters, while simultaneously acting as the city prosecutor. Kathy King ("King") was

---

1. We note that although the trial court entered judgment in favor of the defendants-appellees below, it then ostensibly "dismissed" the action. Such a dismissal is inappropriate and superfluous.

employed as the city clerk when the column was printed in the *Weekly Villager*. As the city clerk, King maintained the Newton Falls public records and recorded the minutes of city council meetings. In addition, King served as the secretary for Dennis Kirkland ("Kirkland"), the Newton Falls City Manager.

When the wedding announcement was published in the newspaper, Schwartz immediately recognized himself as the man being referred to in the article as the alleged groom. Although the column spelled the man's surname as "Swartz," it gave other details that were unmistakably referencing Schwartz. For instance, Schwartz had served as a golf caddy for a member of the Ladies' Professional Golf Association prior to becoming the Newton Falls Law Director, and the announcement listed the groom's occupation as "professional caddy." Moreover, several of the wedding guests named in the article were Schwartz's colleagues in private law practice. King also saw certain clues that led her to conclude that she was the purported bride referenced in the wedding announcement. For example, her maiden name was "Brasko," which was the name employed in the article.

In reality, Schwartz and King had not married. Indeed, King was already married to someone else. After the relevant issue of the *Weekly Villager* circulated, Schwartz discussed the wedding announcement with King and Kirkland. During this conversation, Schwartz opined that appellant could be the person responsible for the publication of the column describing the fictitious nuptials. Appellant was a former member of the Newton Falls City Council who had disagreed with Schwartz over a variety of matters pertaining to the administration of the city's affairs. Moreover, appellant had made disparaging comments about Schwartz in the past, including remarks directed toward Schwartz's previous career as a golf caddy.

Following this conversation, Schwartz, King, and Kirkland investigated the background of the bogus column. After speaking with staff members at the *Weekly Villager*, the trio obtained an original, two-page handwritten document containing the false information. The newspaper had drafted the wedding announcement based on this submission from an unknown person.

Subsequently, King searched through the Newton Falls city records and discovered a handwritten letter from appellant to Kirkland dated December 9, 1993. The letter was in reference to a tree-trimming contract that appellant had entered into with Newton Falls. Upon inspection, it was immediately apparent that the handwriting on the false submission to the *Weekly Villager* bore a very strong resemblance to the penmanship displayed in appellant's 1993 letter to Kirkland.

Both written instruments were presented to a forensic document examiner for scientific handwriting analysis. Based on his inspection, the forensic examiner concluded without question that the same person had written both documents.

Thereafter, Schwartz and King decided to pursue a criminal charge against appellant for violating R.C. 2739.17.[2] A special prosecutor was appointed to oversee the matter, given the obvious conflict of interest that arose due to Schwartz's service as the city prosecutor for Newton Falls. After reviewing the two handwritten documents and the report of the forensic examiner, the special prosecutor authorized the filing of a criminal charge against appellant for violating R.C. 2739.17. King was officially listed as the complainant on the formal complaint. Ultimately, the case was dismissed on a procedural ground, and the charge was never refiled by the prosecutor.

Thereafter, appellant filed a civil action for malicious criminal prosecution on June 23, 1997. His complaint named Schwartz, King, and Kirkland as defendants.[3] They filed a joint answer in response.

Following time for discovery, appellees filed a motion for summary judgment on May 3, 1999. Appended to the motion were affidavits from Schwartz, King, and Kirkland in which each person averred that he or she reasonably believed that the false news item in the *Weekly Villager* had been submitted by appellant and that the initiation of the criminal proceedings had been undertaken without any malice. Appellees also submitted copies of the various documents at issue. Pursuant to the motion, appellees set forth two grounds upon which they claimed to be entitled to judgment as a matter of law: (1) appellant failed to produce any evidence supporting at least one element of his claim for malicious criminal prosecution and (2) appellees were entitled to governmental immunity under R.C. Chapter 2744.

Appellant filed a brief in opposition to the motion, which included a copy of the criminal complaint filed against him as an attachment. He also submitted three depositions that had been taken from Schwartz, King, and Kirkland, respectively.

On June 4, 1999, the trial court granted appellees' motion for summary judgment. In doing so, the trial court agreed that appellant could not prove a necessary element of his claim. Because it ruled that appellees were entitled to

---

2. R.C. 2739.17 was repealed effective July 1, 1996. It provided:

"No person shall contribute or furnish any statement, allegation, or news item to a newspaper, knowing that such statement, allegation, or news item is untrue. Prosecution under this section shall be upon complaint of such newspaper company or of any person injured in property, person, or reputation by the publication of such statement, allegation, or news item."

3. Schwartz, King, and Kirkland will collectively be referred to as "appellees."

summary judgment on this basis alone, the trial court did not address their claim of immunity.

From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignment of error:

"The trial court improperly granted summary judgment to defendants. The trial court made impermissible factual determinations and failed to construe the evidence in the record in the light most favorable to the plaintiff."

In his lone assignment of error, appellant posits that the trial court erred by granting summary judgment. When considering a motion for summary judgment, a trial court must employ the standard set forth in Civ.R. 56(C). In order to prevail, the moving party must establish that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmovant. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068, 1071–1071; *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 65–66, 609 N.E.2d 144, 144–145.

If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. If the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Civ.R. 56(E). An appellate court applies a *de novo* standard of review when determining whether a trial court properly granted summary judgment. *Lake Cty. Gen. Health Dist. v. Quirk* (May 14, 1999), Lake App. No. 98–L–107, unreported, at 2, 1999 WL 315402; *Burkholder v. Straughn* (June 26, 1998), Trumbull App. No. 97–T–0146, unreported, at 6, 1998 WL 553623.

The tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions. *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 84, 564 N.E.2d 440, 442–443. The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *Id.*; *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus; *Cawley v. Lake County Sheriff* (Apr. 7, 1995), Lake App. No. 94–L–080, unreported, at 8, 1995 WL 238608. Arrest of the plaintiff or seizure of his property is not a necessary element. *Trussell*, at the syllabus.

In the case *sub judice,* the trial court found that appellant could prove the third element of his claim, to wit, termination of the prosecution in his favor. Although appellant was never actually tried in a court of law and acquitted of criminal culpability, the dismissal of the charge on a procedural ground obviously inured to his benefit. Based on the fact that appellant was not convicted of violating R.C. 2739.17, the trial court concluded that the prosecution terminated in his favor. The correctness of this conclusion is irrelevant, given that the determination of the existence of probable cause is conclusive to the resolution of this appeal.

With regard to the second element of the tort, the trial court simply assumed for the sake of argument that appellees were malicious when instituting the prosecution. Despite this, the trial court granted summary judgment in favor of appellees based on its determination that they had offered evidence demonstrating the existence of probable cause. As a result, the burden shifted to appellant to demonstrate that a genuine issue of material fact existed as to this element. The trial court determined that appellant offered no evidence of an absence of probable cause, thereby making the grant of summary judgment appropriate.

Upon review, we agree with the trial court's judgment.[4] Even assuming *arguendo* that appellant could establish the other two elements of his claim, he offered absolutely no evidence demonstrating that appellees initiated the criminal proceedings against him without having probable cause.

In the context of an action for malicious criminal prosecution, probable cause may be defined as a reasonable ground of suspicion, supported by circum-

---

**4.** The judgment entry issued by the trial court in this matter is initially disturbing because it makes what appear to be a number of findings of fact, an obviously inappropriate exercise in a summary judgment analysis. In this regard, the trial court stated the following in the entry: "There was no reason to believe that the writing [the 1993 letter] was not generated by the Plaintiff in 1993; there was no reason to believe that the letter was not generated by the Plaintiff when submitted for handwriting analysis in 1996 prior to the filing of the complaint; and lastly, there was no reason to believe the letter was not generated by the Plaintiff after the findings of the forensic document examiner."

Upon closer reading of the entry along with a review of the summary judgment materials, it is apparent that the trial court was simply responding to an argument that appellant advanced in the court below. Specifically, appellant maintained in his brief in opposition to the motion for summary judgment that even though the handwriting on the false submission to the *Weekly Villager* may have matched the penmanship on the 1993 letter, there was no proof that he actually wrote that letter to Kirkland. However, appellant never submitted an affidavit denying authorship of the 1993 letter, and the trial court quite cogently noted that there was no other evidence to suggest that he did not write the letter bearing his signature. Thus, we believe that the trial court did not really weigh and evaluate conflicting issues of fact. Rather, the trial court was attempting to indicate that appellant did not offer any evidence tending to prove that appellees instituted the criminal prosecution without probable cause because appellees reasonably believed that the 1993 letter bearing appellant's signature was, indeed, written by him.

stances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged. *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12, citing *Ash v. Marlow* (1851), 20 Ohio 119, 1851 WL 16, paragraph one of the syllabus. See, also, *Portis v. TransOhio Sav. Bank* (1988), 46 Ohio App.3d 69, 70, 545 N.E.2d 923, 924–925. In determining the lack of probable cause, the defendant's conduct should be viewed in light of his situation and in light of the facts and circumstances which he knew or reasonably should have known at the time he filed the criminal complaint. *Huber*, 66 Ohio St.2d at 29–30, 20 O.O.3d at 17, 18–19, 419 N.E.2d at 11–12, citing *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360, paragraph two of the syllabus.

■ While the existence of probable cause is usually a question for the jury, the trial court can decide the issue where the evidence is such that reasonable minds could come to but one conclusion. *Portis*, 46 Ohio App.3d at 70, 545 N.E.2d at 924–925. Obviously, the trial court can do so when there is no evidence that a given defendant instituted or continued the prosecution in the absence of probable cause.

■ On appeal, appellant contends that a reasonable factfinder could conclude that appellees acted without first having probable cause. We disagree. Appellees' conduct must be examined in light of the facts and circumstances that they knew or reasonably should have known at the time the criminal action was instituted. In the case at bar, the facts and circumstances surrounding the publication of the false wedding announcement were compelling. They were such that a cautious person would have been warranted in the belief that appellant committed the offense. The evidence pointing towards appellant as the supplier of the false news item included the nature of the bogus information, the prior discord between appellant and Schwartz, and the report of the forensic examiner opining that the handwritten wedding announcement submitted to the *Weekly Villager* and appellant's 1993 letter to Kirkland were penned by the same person.[5]

In both his brief in opposition to the motion for summary judgment and his appellate brief before this court, appellant rather speciously argues that there is no proof that the 1993 letter retrieved from the Newton Falls city records was actually written by him, as opposed to somebody else. As previously indicated, however, appellant never submitted an affidavit in the summary judgment

---

5. Moreover, we also note that the special prosecutor essentially authorized the filing of the formal charge against appellant. Under such circumstances, a prosecutor's involvement in the decision to prosecute usually insulates the complainant(s) from civil liability. See, generally, *Robbins v. Fry* (1991), 72 Ohio App.3d 360, 362–363, 594 N.E.2d 700, 701–702; *Archer v. Cachat* (1956), 165 Ohio St. 286, 59 O.O. 369, 135 N.E.2d 404.

exercise denying that the letter was penned by him and bore his signature. Quite simply, there is nothing evidential in the record that even suggests that this letter was not, in fact, written by appellant. Furthermore, even appellant conceded the obvious similarities in writing style between the letter and the handwritten document containing the false wedding information that was submitted to the *Weekly Villager.*

In summary, although the existence of probable cause is usually a jury question, the trial court must decide it, where the evidence is such that reasonable minds could come to but one conclusion. In the present case, appellant offered no evidence demonstrating a lack of probable cause, and the trial court properly granted summary judgment for appellees on this ground alone. Consequently, we need not address the issue of governmental immunity.

Based on the foregoing analysis, the assignment of error is not well taken. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and WILLIAM M. O'NEILL, J., concur.