2001 OK CIV APP 69

Holly HATHCOCK, Jada Hathcock, and Lundin Hathcock, by and through their parent and next friend, Aaron Hathcock, and Aaron Hathcock, individually and as parent and next friend of Holly, Jada and Lundin Hathcock, Plaintiffs/Appellants,

v.

Leslie BARNES, Ph.D., Defendant/Appellee.

No. 95,484.

Court of Civil Appeals of Oklahoma, Division 1.

Jan. 26, 2001.

Certiorari Denied May 8, 2001.

Christopher B. Lyons, Pryor, Oklahoma, and Rowe P. Stayton, Pro Hace Vice, Aurora, Colorado, for Appellants.

John Woodard, III, R. Bryan Morrison, Thayla Painter Bohn, Tulsa, Oklahoma, for Appellee.

## OPINION

CARL B. JONES, Judge:

¶ 1 Appellants, Holly Hathcock, Jada Hathcock, Lundin Hathcock and Aaron Hathcock, brought this malpractice action against Appellee, Leslie Barnes, Ph.D. The underlying case arose out of a child custody dispute in which Aaron Hathcock (the father) was accused of sexually abusing his daughters, Holly and Jada Hathcock. Dr. Barnes was appointed by the trial court to perform psychological evaluations on the family in order to assist the court in making its determination regarding custody and visitation.

¶ 2 After completing her clinical evaluations, Dr. Barnes testified that the custody of the children should be awarded to the mother, with the father only allowed supervised visitation. This recommendation was based upon Dr. Barnes' belief there was a likelihood the father had acted in a sexually inappropriate manner with one of his daughters. Before the trial court ruled on the issue of custody and visitation, the father entered into an agreement regarding custody and visitation. The agreement provided the mother would have custody of the children and the father would have supervised visitation with his daughters. Later, the father sought a modification of the decree after new evidence surfaced the daughter had been abused by a babysitter's minor son. Subsequently, the trial court granted the father permanent custody of his son and unsupervised visitation with his two daughters.

¶ 3 The father filed this lawsuit asserting Dr. Barnes was negligent in performing her custody evaluation. The father amended this lawsuit to include claims of fraud, breach of contract and intentional infliction of emotional distress. Dr. Barnes filed a motion for summary judgment contending she was entitled to absolute immunity from suit for any acts or omissions which occurred in the course and scope of her role as a court-appointed psychologist. The trial court granted this motion. The father and the children appeal.

¶ 4 The issue on appeal is whether a psychologist, appointed by the court to assist it in making a custody determination, performs a function integral to the judicial process thereby entitling the psychologist to immunity from lawsuits arising from this process. Summary judgment is proper only when the pleadings, affidavits, depositions, or other evidentiary materials establish that there is no genuine issue concerning any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, all inferences and conclusions drawn from the evidence must be examined in a light most favorable to the party opposing the motion for summary judgment. *Kincaid v. Black Angus Motel, Inc.,* 1999 OK 54, 983 P.2d 1016, 1022.

¶ 5 It is a well-established principle that judges, advocates, and witnesses are immune from suit where those suits are based upon communications made during or preliminary to judicial proceedings as long as the communication is in some way relevant to the proceeding. *Cooper v. Parker–Hughey,* 1995 OK 35, 894 P.2d 1096, 1098–99. In *North Side State Bank v. County Commissioners,* 1994 OK 34, 894 P.2d 1046, the Oklahoma Supreme Court held immunity is based upon a person's status, e.g., judicial officer, legislator, prosecutor, or witness in judicial proceedings. An official's immunity depends largely upon the nature of the act under review. In *Farrimond v. State ex rel. Fisher,* 2000 OK 52, 8 P.3d 872, 876, the Oklahoma Supreme Court noted a court-appointed receiver acts as a functionary of the court and as such is performing a judicial act. Thus, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.

¶ 6 The question we must answer, then, is whether a psychologist, appointed by the trial court to assist it in making a custody determination, performs a function integral to the judicial process. When a court appoints a psychologist to assist it in making a custody determination, the court is depending upon that individual to exercise discretionary judgment to render an evaluation and make a recommendation. The jurisdictions that have addressed this issue uniformly have held that psychologists appointed by the court to conduct psychological evaluations of parties involved in custody disputes perform a function integral to the judicial process and are immune from suit.[1] The rationale is twofold for this conclusion. If these court-appointed psychologists are subject to suit, they will be less willing to serve the court and if court-appointed psychologists are subject to suit, their opinions may be shaded in favor of the party most likely to sue them rather than a disinterested and objective opinion that a court seeks in making such an appointment.

¶ 7 Relying on *Politi v. Tyler*, 751 A.2d 788 (Vt.2000), the Hathcocks argue the contract entered into between Dr. Barnes and Mr. Hathcock remove Dr. Barnes' status from a court appointment precluding the attachment of any immunity. The Hathcocks argue the contract before us required payment prior to testimony at trial and the evaluation could be discontinued if fees were not paid which was similar to the contractual provisions relied upon by the Court in *Politi*. We disagree. The contractual provisions in *Politi*, provided the parties had requested an evaluation, the psychologist was being retained by the parties and the psychologist would neither testify nor file his report until all fees are paid in full. Here, the contract expressly stated the purpose of the evaluations was to assist the legal system in determining arrangements which are in the best interests of the children involved and the psychologist conducting the evaluation was acting as a unbiased, impartial investigator of the family situation. The contract provided for two methods of payment, however a provision specified payment must be made before release of the information. In *Politi*, the pertinent fact relied upon by the Vermont Supreme Court was the fact the psychologist was not appointed by the trial court rather the parties contracted with the psychologist. In particular, the court order stated: "Counsel to let us know [within] a week who to engage for a forensic evaluation." As a result of this language and the contractual language, the Vermont Supreme Court found the psychologist was acting as an expert witness for the parties and not acting as an arm of the family court. Here, the trial court expressly appointed Dr. Barnes and set forth the division of payment by the parties for Dr. Barnes' services.

¶ 8 The Hathcocks argue allowing Dr. Barnes' immunity violates the Hathcocks' rights of due process. The jurisdictions which have considered this argument do not agree. Adequate remedies and safeguards, other than civil liability, exist to hold court-appointed psychologists accountable for their actions such as cross-examination, another expert witness to refute the court-appointed psychologist and appellate review.[2] At trial, Mr. Hathcocks' attorney vigorously cross-examined and brought to the trial court's attention the alleged deficiencies in the evaluation. Further, Mr. Hathcock was free to present his own expert witness to refute Dr. Barnes' assessment.

¶ 9 Based on the analysis and public policy concerns addressed above, we find that a court-appointed psychologist is immune from liability while conducting evaluations and

---

1. Williams v. Rappeport, 699 F.Supp. 501, 508 (D.Md.1988); *Parker v. Dodgion*, 971 P.2d 496, 499 (Utah 1998); *Duff v. Lewis*, 114 Nev. 564, 958 P.2d 82, 87 (1998); *Lythgoe v. Guinn*, 884 P.2d 1085, 1093 (Alaska 1994); *LaLonde v. Eissner*, 405 Mass. 207, 539 N.E.2d 538, 542 (1989); *Stone v. Glass*, 35 S.W.3d 827, 2000 WL 126917 (Ky.App.2000); *Diehl v. Danuloff*, 242 Mich.App. 120, 618 N.W.2d 83, 90 (2000); *Delcourt v. Silverman*, 919 S.W.2d 777, 783 (Tex.Ct.App.1996); *Awai v. Kotin*, 872 P.2d 1332, 1337 (Colo.App.

1993); *Lavit v. Superior Ct.*, 173 Ariz. 96, 839 P.2d 1141, 1146 (Ct.App.1992); *S.T.J. v. P.M.*, 556 So.2d 244, 248 (La.Ct.App.1990); *Myers Through Myers v. Price*, 463 N.W.2d 773, 775 (Minn.App.1990); *Howard v. Drapkin*, 222 Cal. App.3d 843, 271 Cal.Rptr. 893, 905 (1990).

2. *Parker v. Dodgion, supra* at note 1; *Lythgoe v. Guinn, supra* at note 1; *LaLonde v. Eissner, supra* at note 1; *Diehl v. Danuloff, supra* at note 1.

making recommendations to the trial court determining child custody, a function integral to the judicial process. Accordingly, the trial court's grant of summary judgment to Dr. Barnes is affirmed.

¶ 10 AFFIRMED.

¶ 11 ADAMS, P.J., and JOPLIN, J., concur.