OPINION
{¶ 1} In this accelerated calendar case, appellant, Anthony W. McCleery individually and as a representative of his minor children Selena and Allyssa McCleery, appeals from the decision of the Lake County Court of Common Pleas. (For clarity, we will only refer to appellant in the singular.) That decision granted appellee, Dr. Michael Leach, summary judgment on appellant's claims for psychological malpractice and negligence. The trial court did not find that there was absolute immunity as claimed by appellee, but nevertheless found that there was no duty and no proximate cause. For the reasons that follow, the judgment of the trial court is affirmed with some deviation from the trial court's analysis. Specifically, we find that summary judgment should have been granted both on the basis of absolute liability and no proximate cause.
 {¶ 2} By way of background, in 1998 appellant filed a complaint for divorce from his wife, Susan McCleery ("Mrs. McCleery"). By order of the magistrate, on February 26, 1999, appellee was specifically directed to conduct a psychological examination and evaluation of appellant, Mrs. McCleery and the minor children "to assist the Court in determining [the] allocation of parental rights [and] responsibilities[.]"
 {¶ 3} Ultimately, the parties reached agreement on a shared parenting agreement which was approved by the court. Then, on October 21, 1999, the trial court issued a judgment entry of divorce wherein the trial court formally adopted the shared parenting agreement which named Mrs. McCleery as the primary residential parent.
 {¶ 4} Almost a year later, on December 4, 2000, the trial court modified the shared parenting plan by transferring primary residential parenting responsibilities to appellant. Appellant and appellee seem to agree that this custody modification was precipitated by Mrs. McCleery's unsuccessful suicide attempt during the year.
 {¶ 5} Subsequently, on April 16, 2001, appellant filed a pro se complaint on behalf of himself and his minor children alleging that appellee had committed psychological malpractice and negligence as he "did not conduct the psychological evaluation in a proper and adequate manner." According to appellant, "[appellee's] negligent prosecution of his evaluation caused [appellant] loss of consortium with his minor children, loss of attorney fees to zealously prosecute the case to gain back custody of his minor children, loss of child support payments, loss of payments for the evaluations to [appellee], and payments for psychological counseling of the minor children."[1]
 {¶ 6} Appellee subsequently moved for summary judgment on July 2, 2001, arguing that as a court-appointed psychologist, he was entitled to absolute immunity for his involvement in the divorce proceeding. In the alternative, appellee maintained that any testimony, recommendations, or reports he supplied to the trial court in the divorce proceeding was subject to testimonial immunity. Appellee further submitted that the damages allegedly suffered by appellant were not proximately caused by appellee's actions because appellant voluntarily entered into the shared parenting agreement.
 {¶ 7} In support of his motion for summary judgment, appellee attached the following documents: (1) a copy of the February 26, 1999 magistrate's order directing appellant and Mrs. McCleary and the minor children to meet with appellee for the purpose of a psychological evaluation; (2) a copy of the docket sheet maintained in the divorce proceeding; a correspondence dated March 30, 1999 from appellant to Mrs. McCleery referring to appellee as "the court ordered psychological evaluator," including the proposed shared parenting draft prepared by appellant; (3) a judgment entry of divorce dated October 21, 1999, wherein the trial court adopted a slightly modified version of the shared parenting agreement naming Mrs. McCleery as the primary residential parent; and (4) a judgment entry dated December 4, 2000, which transferred the primary caregiving responsibilities to appellant.
 {¶ 8} On July 11, 2001, nine days subsequent to the filing of the motion for summary judgment, appellant filed an emergency motion to compel discovery. In it, he requested the trial court to order appellee "to provide copies of his entire file relating to the underlying case involving Susan McCleery and [appellant]." Attached to the motion to compel was, inter alia, a signed release from Mrs. McCleery dated May and November 2000. That release authorized appellee to release her psychological records to the law firm of Dworken Bernstein, who apparently had represented appellant during the earlier divorce proceedings.
 {¶ 9} Thereafter, on July 16, 2001, appellant filed a motion for leave seeking a thirty-day extension to respond to the summary judgment exercise. In order to respond to appellee's motion for summary judgment, appellant maintained that "[he] must engage in discovery to present to the Court the relevant facts." Appellant seemed to suggest that the manner in which appellee conducted the psychological examination and subsequently formed his conclusions were relevant to the case. From this, appellant concluded that only when these facts were discovered and presented to appellant's expert, Dr. Donald Weinstein ("Dr. Weinstein"), could he prepare a response to appellee's motion for summary judgment.
 {¶ 10} Also on July 16, 2001, appellee filed a brief in opposition to appellant's emergency motion to compel discovery. While appellant attached a release signed by Mrs. McCleery to his motion to compel discovery, appellee maintained that this release was signed during the pendency of the divorce proceeding and was not executed for purposes of the instant lawsuit. Furthermore, appellee pointed out that the document authorized the release of records to the law firm of Dworken 
Bernstein, not appellant or his expert, Dr. Weinstein. From this, appellee concluded that appellant did not have a valid authorization from Mrs. McCleery for the release of her psychological records.
 {¶ 11} In turn, on July 23, 2001, appellant filed a reply to appellee's brief in opposition to his emergency motion to compel discovery. According to appellant, Mrs. McCleery signed a document authorizing appellee to release her psychological reports to appellant's agent, Dworken Bernstein.
 {¶ 12} On August 20, 2001, the trial court issued a judgment entry denying appellant's motion to compel discovery. According to the trial court, the release signed by Mrs. McCleery was not executed for purposes of the instant lawsuit and did not authorize the release of Mrs. McCleery's psychological records to appellant or Dr. Weinstein. Rather, it permitted such information to be released to the law firm of Dworken Bernstein, which was not involved in the instant litigation. Curiously, the trial court granted appellant until August 20, 2001, the date of the entry, to respond to appellee's motion for summary judgment.[2]
 {¶ 13} On September 20, 2001, appellant, undaunted, filed a second motion for leave seeking a thirty-day extension to respond to the summary judgment motion. Although the trial court denied appellant's motion to compel discovery, appellant continued to claim that appellee had failed to produce the requested psychological records. Appellant further argued that during his deposition testimony, appellee refused to answer certain questions.
 {¶ 14} After denying appellant's request for an extension of time, the trial court issued a judgment entry on September 27, 2001, granting appellee's motion for summary judgment. Although the trial court held that, per Willitzer v. McCloud (1983), 6 Ohio St.3d 447, appellee was not entitled to immunity, the court went on to conclude that appellant had failed to establish a prima facie case of malpractice or negligence against appellee. Specifically, the trial court determined there was no evidence that appellee owed a duty to appellant, or that appellant's damages were proximately caused by appellee's malpractice or negligence.
 {¶ 15} After the trial court issued this final appealable order, appellant filed a notice of filing documents under seal on October 25, 2001, with the trial court. A day later, on October 26, 2001, appellant filed his notice of appeal with this court. In a judgment entry dated November 8, 2001, the trial court ordered the Clerk of Courts to return to appellant the documents listed in his notice of filing documents under seal.
 {¶ 16} It is from the trial court's September 27, 2001 entry granting summary judgment in favor of appellee that appellant appeals, submitting ten assignments of error for our consideration:
 {¶ 17} "1. The trial court erred in not properly ruling on the emergency motion to compel discovery due to ORC2317.02(a)(I) and ORC2151.01[.]
 {¶ 18} "2. The trial court erred in not compelling the defendant-appellee to release the records of Susan McCleery and of plaintiff-appellants to either Dr. Weinstein, plaintiff-appellees [sic] expert witness in this case and in the underlying divorce case, or to Gary Okin of Dworken and Bernstein, the attorney who represented plaintiff-appellants in the underlying divorce case[.]
 {¶ 19} "3. The trial court violated the plaintiff-appellants' constitutional right to a remedy and abused its discretion by dismissing this case without allowing sufficient time to prepare a response to summary judgment after refusing to compel discovery on defendant-appellee[.]
 {¶ 20} "4. The trial court abused its discretion by not issuing a court order compelling the defendant-appellee to answer questions in a deposition relating to the defendant's recommendations made for the children, plaintiff-appellants, Allyssa McCleery and Selena McCleery[.]
 {¶ 21} "5. The trial court abused its discretion by not issuing a stipulation or protective order pursuant to Civ.R. 26(C) that would compel the defendant to release the records of plaintiff-appellants and Susan McCleery and that would compel plaintiff-appellants file confidential records under seal, thus protecting all parties[.]
 {¶ 22} "6. The trial court abused its discretion in not granting an extension of time to file a response to summary judgment after partially adjudicating the emergency motion to compel discovery[.]
 {¶ 23} "7. The trial court erred in its judgment entry filed on Sept. 27, 2001 by determining that the defendant-appellant has no duty to plaintiff-appellants[.]
 {¶ 24} "8. The trial court erred when it determined that the defendant-appellee had not proximately caused damages[.]
 {¶ 25} "9. The trial court erred in its Sept. 27, 2001 judgment entry filed by failing to give notice of possible dismissal.
 {¶ 26} "10. The trial court erred in its judgment entry of Nov. 8, 2001 by not permitting the documents submitted under seal to be filed as an offer of proof under Evid. R. 103(A)[.]"[3]
 {¶ 27} The thrust of appellee's motion for summary judgment was that there was either absolute immunity, testimonial immunity or that there was no proximate cause. Appellee argues that the first through sixth assignments of error dealt with some aspect of discovery regarding the existence of malpractice in the psychological evaluations conducted by appellee. Thus, appellee contends that appellant's discovery requests were irrelevant in addressing the issues raised in appellee's motion for summary judgment.
 {¶ 28} Specifically, if appellee were protected by absolute immunity, then appellee was not liable, regardless of any malpractice. And, similarly, if appellant did not rely on any act of appellee, then there was no proximate cause and no liability. We agree. Thus, for these reasons alone, any error in the denial of these requests was harmless and we affirm the judgment of the trial court as to assignments one through six.
 {¶ 29} Now we turn to the critical issues presented in this appeal. Assignments of error seven and eight challenge the trial court's grant of summary judgment in favor of appellee.
 {¶ 30} Appellate review of a summary judgment exercise is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Hence, we determine that summary judgment also should have been granted on the basis of absolute immunity, as well as on the lack of any proximate cause.
 {¶ 31} Immunity is an affirmative defense. BCL Ent. v. Ohio Dept.of Liquor Control, 77 Ohio St.3d 467, at 471. Here, it means that even if a duty otherwise exists and is breached, and there is proximate cause which results in damages, there is no liability. Nationwide Mut. Ins.Co. v. Kanter Corp. (1995), 102 Ohio App.3d 773, at 776. Thus, the issue of whether there is absolute immunity is a totally separate issue from whether there is proximate cause.
 {¶ 32} According to appellant's appellate arguments, appellee owed him a duty and subsequently breached that duty, citing Elling v. Graves
(1994), 94 Ohio App.3d 382, and Willitzer. Appellant infers that he would have never entered into the shared parenting plan designating Mrs. McCleery as the primary custodian of the children were it not for appellee's inaccurate recommendation that she was mentally stable.
 {¶ 33} Appellee counters by submitting that as a court-appointed psychologist, he was entitled to absolute immunity, or minimally, testimonial immunity, for his actions in the underlying divorce proceeding. In the alternative, he argued there was no proximate cause.
 {¶ 34} As to the absolute immunity defense, Ohio courts have had little opportunity to address this particular issue. As a result, we initially had some concern that the facts of this particular case were distinguishable from the traditional situation where the trial court actually relied on the report in making its own adjudication. Further, the majority of these Ohio cases involved guardian ad litems and not psychologists or similar experts. Kurzawa v. Mueller (C.A.6, 1984),732 F.2d 1456; Penn v. McMonagle (1990) 60 Ohio App.3d 149; Dolan v.Kronenberg (July 22, 1999), 8th Dist. No. 76054, 1999 WL 528202, at 3.
 {¶ 35} Sister state and federal jurisdictions have uniformly held that court-appointed psychologists ordered to conduct psychological evaluations of the parties in a divorce/custody proceeding perform a function that is integral to the judicial process and are entitled to absolute immunity. See, also, Moses v. Parwatikar (C.A.8, 1987),813 F.2d 891; Hathcock v. Barnes (Okla.App. 2001), 25 P.3d 295, 297;Diehl v. Danuloff (Mich.App. 2000), 242 Mich. App. 120, 129-134; Stonev. Glass (KY.App. 2000), 35 S.W.3d 827, 830; Parker v. Dodgion (Utah 1998), 971 P.2d 496, 498-499; Duff v. Lewis (Nev. 1998), 114 Nev. 564,569-571; Delcourt v. Silverman (Tex.App. 1996), 919 S.W.2d 777, 782-783;Lythgoe v. Guinn (Alaska 1994), 884 P.2d 1085, 1087-1090.
 {¶ 36} "[A] court-appointed psychologist performing a custodial evaluation acts as a fact-finder for the court, and is an integral part of the judicial process[.]" Stone at 830. "Fact-finding is an integral part of the judicial process and a function naturally associated with judges and juries both of whom are granted immunity from suit." Parker at 498.
 {¶ 37} Appellant relies heavily on a single instance where the Supreme Court of Ohio did have the occasion to comment on the availability of immunity for a physician involved in an administrative proceeding:
 {¶ 38} "An independent physician examining workers' compensation claimants at the request of the Industrial Commission of Ohio, for the purpose of reporting their medical conditions, is not absolutely immune from a civil suit based on his examinations, notwithstanding that his report and testimony at an adjudicatory proceeding are privileged under the doctrine of witness immunity." (Emphasis added.) Willitzer, at syllabus.
 {¶ 39} In attempting to reconcile Wilitzer with what appears to be the clear public policy of numerous other states in regards to witness immunity, we find ourselves in agreement with the logic of Penn at 149:
 {¶ 40} "*** Willitzer stands for the proposition that physicians who are not appointed by a court are to be granted no more than qualified immunity for work conducted outside the court. We adhere to that finding and believe that to achieve the truthseeking goal inherent in all judicial proceedings, the rule of Willitzer, should it survive, must belimited to the particular facts of that case as prescribed by S.Ct.R.Rep.Op. 1(B)." (Emphasis added.) Elling, 388, fn. 1, citing Penn at 152.
 {¶ 41} It is clear to us that the underlying principles set out in the Ohio guardian ad litem cases and the four-square cases from our sister jurisdictions, are sufficiently compelling to apply them to the instant case. It is irrelevant that appellee's potential liability is not predicated upon his testimony at an adjudicatory proceeding. There is no valid distinction between the evaluation report produced by the court's expert by the court's order and testimony which would have been elicited in reference to that report. Both were essential "to assist the Court in determining [the] allocation of parental rights [and] responsibilities[.]" Appellee was at all times functioning as an arm of the court.
 {¶ 42} There are several reasons to support the foregoing conclusion. "If these court-appointed psychologists are subject to suit, they will be less willing to serve the court and if court-appointed psychologists are subject to suit, their opinion may be shaded in favor of the party most likely to sue them rather than a disinterested and objective opinion that a court seeks in making such an appointment." Hathcock at 297. See, also, Parker at 499; Diehl at 132; Duff at 570.
 {¶ 43} Accordingly, the rationale employed by these other jurisdictions compels a conclusion that appellee is entitled to absolute immunity. Appellee was appointed to fulfill a quasi-judicial responsibility under the magistrate's direction in the divorce proceeding. Specifically, appellee was ordered to conduct a psychological examination and evaluation of appellant, Mrs. McCleery and the minor children "to assist the Court in determining [the] allocation of parental rights [and] responsibilities[.]"
 {¶ 44} By issuing such a directive, appellee was acting as an arm of the court and only carrying out a duty imposed upon him by the court order, regardless of whether the duty was to produce an evaluation or to testify. In other words, appellee "performed a function integral to the judicial process. As arms of the court, [appellee is] entitled to the absolute immunity given to judges and other judicial officials." Seibelv. Kemble (1981), 631 P.2d 173, 179.
 {¶ 45} And as previously mentioned, the extension of absolute immunity to a court-appointed psychologist is consistent with the position taken by several Ohio courts in affording guardian ad litems with absolute immunity. Kurzawa; Penn and Dolan, supra. As noted by the Supreme Court of Hawaii:
 {¶ 46} "We believe that the better position is to provide court-appointed psychiatrists absolute immunity from suit. In adopting this position we do not condone negligence by persons in the performance of their duties or their failure to abide by a court order. The grant of absolute immunity is not intended to permit the doctors to hide behind the judicial shield. Rather, our position is necessary to maintain the orderly administration of the judicial process.
 {¶ 47} "Judicial immunity is based on the overriding public policy that `judges should be at liberty to exercise their functions with independence and without fear of consequences.' ***
 {¶ 48} "Other reasons advanced for judicial immunity are: (1) the need to save time which would be spent defending suits; (2) avoid deterring competent persons from taking office; (3) the need for finality in the resolution of disputes; (4) existence of adequate alternative remedies; and (5) the unfairness of requiring an opinion and the exercise of judgment to which is given special deference and then subjecting that person to liability based on the opinion of another. ***
 {¶ 49} "The reasons underlying judicial immunity, especially the freedom and independence to act without apprehension of possible adverse consequences, apply equally to court-appointed officials." Seibel at 177-178.[4]
 {¶ 50} For these reasons, we hold that appellee, who was a court-appointed psychologist and served as such during the divorce proceeding to aid the court in allocating parental rights and responsibilities, is entitled to absolute immunity.[5]
 {¶ 51} Even if this court were to hold that appellee was not entitled to absolute immunity, we would still affirm the trial court's determination that summary judgment was appropriate as to the issues of duty and proximate cause.
 {¶ 52} We begin our analysis by setting forth the elements of professional negligence as it relates to psychologists. "In order to establish liability, appellant must demonstrate, by a preponderance of evidence, the existence of a duty owed by the psychologist, as defined by the standard of care in the psychological community, breach of that duty, and resultant injury proximately caused by that psychologist's act or omission." Pisani v. Pisani (Dec. 11, 1997), 8th Dist. No. 72136, 1997 WL 767452, at 3.
 {¶ 53} Assuming for the sake of argument that appellee, as a court-appointed psychologist, did not have absolute immunity and owed appellant a duty of care, appellant's claims for negligence and malpractice still do not survive summary judgment. Appellant's appellate theory for recovery is that he would not have entered into the shared parenting agreement naming Mrs. McCleery the primary residential parent of the children if it were not for appellee's alleged inaccurate assessment that she was mentally stable.
 {¶ 54} Even if appellee had made recommendations during the divorce proceeding as to the shared parenting plan arrangement, there is no evidence in the record to indicate that appellant, in fact, relied on appellee's recommendations to enter into the shared parenting plan.
 {¶ 55} In his motion for summary judgment, appellee maintained that the damages suffered by appellant were not proximately caused by his actions because appellant voluntarily entered into the shared parenting plan. To that end, appellee attached appellant's draft proposal for a shared parenting agreement. It was dated prior to any evaluation byappellee. This draft proposed that Mrs. McCleery be designated as the primary residential parent. With several modifications, this was the plan that was adopted by the court.
 {¶ 56} Appellant could have rebutted appellee's argument by supplying his own affidavit to explain how he entered into the shared parenting plan in reliance on appellee's recommendation that Mrs. McCleery was mentally stable. He did not. There was no rebuttal to this evidence that appellant did not rely on the evaluation in formulating his decision to propose Mrs. McCleery as the primary residential parent in the agreement.
 {¶ 57} Appellant did not need to conduct discovery to prepare such an affidavit as these assertions dealt with matters that were within his personal knowledge. Although in his appellate briefing, appellant implies reliance, in the record there is no evidence of that reliance. Without reliance to establish proximate cause, appellant's claims for negligence and malpractice cannot be established.
 {¶ 58} Thus, the trial court's finding of no proximate cause was correct. And, per our previous discussion, we also make a de novo determination that absolute immunity is an applicable affirmative defense that would also support the motion for summary judgment. Accordingly, the seventh and eighth assignments of error are without merit.
 {¶ 59} In the ninth assignment of error, appellant contends that the trial court failed to give him notice of the possible dismissal of his case. As to this point, we note that in its September 27, 2001 judgment entry, the trial court erroneously dismissed the instant action. Such a dismissal was superfluous. Baryak v. Kirkland (2000),137 Ohio App.3d 704, 706, fn. 1. Rather, the trial court should have entered judgment in favor of appellee. To that end, we modify the judgment of the court by entering judgment in favor of the appellee and denying all claims of the appellant[s] for the reasons state in this opinion.
 {¶ 60} It is axiomatic that Civ.R. 56 contemplates that a trial court may enter judgment in favor of the moving party during a summary judgment exercise. Baryak at 706, fn. 1. Thus, notice of such an occurrence is not required, even in instances where the non-moving party is proceeding pro se. Accordingly, the ninth assignment of error is meritless, except as noted.
 {¶ 61} In the tenth and final assignment of error, appellant takes issue with the trial court's November 8, 2001 judgment entry ordering the Clerk of Courts to return to appellant documents listed in his notice of filing documents under seal. According to appellant, the trial court abused its discretion in not permitting the documents to be filed since the filing of these documents "[were] required for justice to prevail."
 {¶ 62} Given that appellant filed a notice of appeal from the September 27, 2001 entry granting summary judgment in favor of appellee, this court is without jurisdiction to consider the trial court's November 8, 2001 ruling. Nonetheless, we perceive no error in the trial court ordering the Clerk of Courts to return to appellant the documents listed in his notice of filing documents under seal in light of the fact that the trial court had already rendered a decision in the matter. Appellant's tenth assignment of error is, therefore, not well-taken.
 {¶ 63} Accordingly, appellant's ten assignments of error are without merit, and the judgment of the trial court is modified and affirmed as modified based on the reasons set forth in the opinion.
WILLIAM M. O'NEILL, P.J., concurs.
[1] R.C. 2305.01.1, which required a plaintiff bringing an action for malpractice to file a certificate of merit, has been repealed.
[2] The record fails to indicate if a hearing was held on August 2, 2001, to consider appellant's motion to compel, and if this hearing was recorded. Likewise, it is unclear from the record whether appellant was otherwise given notice of the August 20, 2001 extension prior to the filing of the August 20, 2001 judgment entry as was suggested at oral argument.
[3] As an aside, we note that in his appellate brief, appellant makes reference to appellee's deposition testimony, as well as other documents, that were never filed with or considered by the trial court during the proceedings below. An appellate court, however, may not determine an appeal based on matters outside the record. App.R. 9(A); App.R. 12(A)(1)(b). Given that these documents were not before the trial court, we will not consider them on appeal.
[4] In Willitzer, Justice Brown cited to Seibel in his dissenting opinion.
[5] Since the entitlement of absolute immunity encompasses those immunities granted through testimonial immunity, we will forego any determination as to whether testimonial immunity is applicable in the instant case.