OPINION
{¶ 1} Appellant, James M. Baron, appeals from the decision of the Lake County Court of Common Pleas awarding appellee, Ronald Andolsek, summary judgment on appellant's complaint for malicious prosecution.
 {¶ 2} On February 11, 1998, at approximately 10:48 p.m., the Kirkland City Police Department responded to a call reporting a fight at the Olde Towne Tavern in Kirkland, Ohio. The fight involved four or more bar patrons and was witnessed by several others, including some tavern employees. Patrolmen Sutch, Dubick, and Prib were dispatched to the scene. Upon their arrival, the officers observed several injured parties.
 {¶ 3} The officers initially noticed Richard Wightman ("Wightman"), a bar patron involved in the fight, bleeding heavily from his head. Emergency medical assistance was summoned and Wightman was taken to Richmond General Hospital and eventually life-flighted to a separate facility due to the severity of his head injury and consequent blood loss. Before leaving for the hospital, Wightman gave the officers a statement. Wightman indicated that he intervened in an argument between his friends and two other bar patrons, eventually identified as appellant and his father ("the Barons"). Wightman told the officers that, in attempting to diffuse the argument he was struck on the head with a beer bottle by a man wearing a red jacket. Appellant was wearing a red jacket and was specifically identified by several other witnesses.
 {¶ 4} The officers continued taking statements from the bar's patrons and employees. Witness Tammi Sharp stated that two gentlemen, later identified as the Barons, became agitated with the language used by four men at a different table. Appellant then approached the men and "threw the first punch" which struck Wightman. Witnesses Louis Godfrey and Thomas Galizia both stated that appellant hit Wightman in the head with a beer bottle.
 {¶ 5} In the meantime, the Barons remained in the tavern. The officers noticed Larry Baron, appellant's father, bleeding from his mouth and observed appellant, with blood on his forehead, attempting to call his mother. The Barons told one of the officers that they had been assaulted during the fight.
 {¶ 6} On February 12, 1998, appellee, Officer Richard Andolsek, began investigating the incident. After reviewing police reports filed by Officers Prib and Sutch, appellee filed a complaint and summons with the Willoughby Municipal Court. With the complaint, appellee additionally filed an affidavit of fact in support of probable cause for issuance of warrant or summons. Appellant was subsequently arrested but never made a statement because, according to appellant, he was never asked to do so.
 {¶ 7} On July 10, 1998, appellant was indicted on two counts of felonious assault, violations of R.C. 2903.11(A)(2) and R.C.2903.11(A)(1) respectively. On October 26 and 27, 1998, a jury trial was held and appellant was acquitted of the charges.
 {¶ 8} On March 25, 2002, appellant filed a complaint for malicious prosecution. On October 9, 2002, appellee filed a motion for summary judgment. On November 4, 2002, appellant filed a motion to strike various exhibits attached to appellee's motion. On November 13, 2002, appellee filed a motion for leave to supplement his motion for summary judgment with an affidavit to effectively comport with the requirements of Civ.R. 56(E).
 {¶ 9} On December 17, 2002, the trial court granted appellee's motion to supplement its motion for summary judgment with an affidavit, denied appellant's motion to strike exhibits, and granted appellee's motion for summary judgment. Appellant now appeals the trial court's judgment.
 {¶ 10} In his sole assignment of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment.
 {¶ 11} Summary judgment will be granted where the movant demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, which is viewed in favor of the nonmoving party, that reasonable minds can draw but one conclusion and that conclusion is adverse to the nonmoving party.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 12} The moving party in a summary judgment exercise shoulders the initial burden of informing the trial court of the basis of the motion. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107. Once this initial burden is satisfied, a reciprocal burden arises for the nonmoving party to respond setting forth specific facts illustrating a genuine issue of material fact necessitating a trial. Id. A "material" fact is one affecting the outcome of the suit under the applicable substantive law. Russel v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304.
 {¶ 13} When reviewing a summary judgment, an appellate court applies a de novo standard of review. Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, at ¶ 13. Under de novo review, an appellate court effectively applies the same standard as that of the trial court, i.e., determining whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a mater of law. Id.
 {¶ 14} The tort of malicious criminal prosecution entails the right to recover damages for harm caused in a criminal case by the misuse of criminal actions. Criss v. Springfiled Twp.
(1990), 56 Ohio St.3d 82, 84. To prevail on a claim for malicious prosecution, a plaintiff must prove: (1) malice in initiating or continuing the prosecution; (2) lack of probable cause to institute said proceedings; and (3) termination of the prosecution in favor of the criminal defendant. Guy v.McCartney, 7th Dist. No. 00 JE 7, 2002-Ohio-3035, at ¶ 19, citing, Trussell v. Gen. Motors Corp. (1990),53 Ohio St.3d 142, 144.
 {¶ 15} In the current matter, appellant was acquitted of the underlying charges of felonious assault. Consequently appellant alleges that the lower court erred in granting summary judgment in appellee's favor on the issues of probable cause and malice.
 {¶ 16} "In an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." Melanowski v. Judy (1921), 102 Ohio St. 153, paragraph one of the syllabus. Although the existence of probable cause is commonly a factual question, the trial court may properly resolve the issue where the evidence is such that reasonable minds could come to but one conclusion. Baryak v.Kirkland (2000), 137 Ohio App.3d 704, 711.
 {¶ 17} Probable cause may be defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense with which he is charged. Id. At 710-711. The proof required to establish probable cause is significantly less than proof beyond a reasonable doubt. It is therefore entirely possible to have probable cause but no conviction. Bellino v. Superior Beverage Co., 11th Dist. No. 2000-T-0100, 2001-Ohio-7057, at 20.
 {¶ 18} Moreover, probable cause is presumed where there is a prior judicial finding that the accused committed the charged offense. Adamson v. May Co. (1982), 8 Ohio App.3d 266, 268. A grand jury indictment or bind-over order following a preliminary hearing is prima facie evidence of probable cause. Guy, supra, at ¶ 23. Accordingly, a finding of probable cause based upon an indictment issued by a grand jury will not be disturbed absent a showing that the proceedings were significantly irregular or the finding was tainted by perjured testimony. Bellino, supra, at 19. In effect, the presence of a grand jury indictment creates a rebuttable presumption of probable cause for the underlying charge(s).
 {¶ 19} When contemplating the presumption of probable cause, we are mindful that the presumption applies to the time when the charges were filed. Bellino, supra. In determining the lack of probable cause, the defendant's conduct should be viewed in light of his situation and in light of the facts and circumstances which he knew or reasonably should have known at the time he filed the criminal complaint. Huber v. O'Neill (1981),66 Ohio St.2d 28, 29-30.
 {¶ 20} Appellant argues that, irrespective of the indictment, appellee did not act as a "cautious person" in preparing his affidavit of fact in support of probable cause. Appellant contends that because appellee did not personally speak with him, his father, or Wightman prior to filing the affidavit, appellee's decision to file the affidavit of fact in support of probable cause was slipshod, one-sided, and not the product of a cautious, reasonable decision.[1] We disagree.
 {¶ 21} It bears mention that appellant erroneously attempts to establish a lack of probable cause without presenting evidence that would formally rebut the presumption of probable cause resulting from the grand jury's indictment. As already indicated, the presumption may be rebutted by demonstrating perjury or significant irregularities in the grand jury proceedings. This presumption is based upon a twofold policy: the likelihood that such a tribunal finding is reliable, and the interest in discouraging lawsuits which inhibit enforcement of criminal laws.Adamson, supra, at 269.
 {¶ 22} Evid.R. 301 describes the effect of the presumption and reads:
 {¶ 23} "In all civil actions and proceedings not otherwise provided for by statute enacted by the General Assembly or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast."
 {¶ 24} Consequently, unless an established presumption is rebutted, it creates a mandatory inference or a legally required rule of reasoning. That is, if reasonable minds are required to find the underlying facts and if the consequent presumed fact remains unrebutted, the court should direct that the presumed fact has been established as a matter of law. Carson v.Metropolitan Life Ins. Co. (1956), 165 Ohio St. 238, 244. Where a controlling presumption is not rebutted, a mandatory inference in favor of the presumed fact is required. Adamson, supra, at 269.
 {¶ 25} Although the rules of evidence do not define the extent of proof needed to rebut a presumption, State v. Myers
(1971), 26 Ohio St.2d 190 is instructive:
 {¶ 26} "`* * * When a party is not required to sustain the burden of proof upon some particular issue, a rebuttable presumption arising out of such issue may be overcome by evidence which counterbalances the evidence to sustain the presumption; however, when such party is required to assume the burden of proof upon an issue, any rebuttable presumption arising there from must be removed by the same degree of proof necessary to sustain the issue.'" Id., at 201-202, quoting Kennedy v.Walcutt (1928), 118 Ohio St. 442, paragraph five of the syllabus.
 {¶ 27} Where one party relies on a presumption and that party's adversary offers evidence of a substantial nature counterbalancing the presumption, it disappears. Adamson, supra, at 270, citing, Carson, supra. The law in this area is clear: to rebut the presumption of probable cause, a plaintiff must demonstrate significant irregularities or perjury committed during the grand jury proceeding. See, e.g. Adamson, supra, at 268-269; Guy, supra, at ¶ 23; Tilberry v. McIntyre (1999),135 Ohio App.3d 229, 237; Uroseva v. Lerakis (July 10, 1992), 11th Dist. No. 91-T-4602, 1992 Ohio App. LEXIS 3665, at 6.
 {¶ 28} In the instant case, appellant offered no evidence that the indictment was a result of perjured testimony or that the grand jury proceedings were significantly irregular. Thus, appellant fails to overcome the presumption of probable cause flowing from the grand jury's issuance of his indictment. Appellant's failure to rebut the presumption is essentially fatal to his appeal as he fails to show a genuine issue of material fact regarding the lack of probable cause.
 {¶ 29} However, even if appellant's argument regarding appellee's failure of caution in filing the criminal complaint were on point, such evidence does not establish appellee lacked probable cause. To wit, appellant does not dispute the witness statements which assert that appellant initiated the fight by striking Wightman with a beer bottle. Appellant does not dispute that both he and his father failed to file either a witness statement or a police report. Moreover, appellant neither addresses nor disputes the fact that appellee's affidavit of fact was based upon information gathered from witness statements and reports made by the officers who responded to the scene.
 {¶ 30} In our view, appellee had reasonable grounds to believe that appellant was guilty of the offense charged. Appellee had several witnesses, including the victim, who asserted that appellant was the aggressor in the fight. While the Barons gave the police a verbal statement that they were assaulted, the police were under no obligation to give any credence to their story. Criss, supra, at 263. Moreover, the Barons never memorialized their statement in writing nor filed a police report regarding the purported assault of which they were victims. Based upon the evidence available in the record, appellant failed to present substantial evidence to rebut the presumption that probable cause existed to prosecute appellant for felonious assault.
 {¶ 31} In sum, appellant failed to overcome the presumption of probable cause which attached when the grand jury indicted him. That is, appellant neither demonstrated that the grand jury proceedings were significantly irregular nor provided evidence that the proceedings were tainted by perjured testimony. Moreover, even without the presumption which appends to a grand jury's indictment, appellee had reasonable grounds for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that appellant was guilty of the offense. Therefore, we hold that appellant cannot establish that appellee lacked probable cause to pursue the charges against appellee.
 {¶ 32} While appellant's failure to establish lack of probable cause undermines his malicious prosecution claim, appellee is also entitled to judgment as a matter of law under R.C. 2744., et seq., Ohio's sovereign immunity statute. Appellee notes that he, as an employee of the city of Kirkland is shielded from liability by the Political Subdivision Tort Liability Act, under R.C. 2744.03(A)(6)(b).[2] Under R.C.2744.03(A)(6)(b), an employee of a political subdivision is entitled to sovereign immunity unless his acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellant neither alleges nor sets forth facts sufficient to demonstrate that appellee filed the felonious assault charges with malice, bad faith, or in a wanton or reckless manner. Thus, although academic in light of appellant's failure to demonstrate a material issue of fact regarding his malicious prosecution claim, we agree that R.C. 2733.03(A)(6)(b) vouchsafes appellee immunity under the current circumstances.
 {¶ 33} Finally, appellant contends that the trial court erred in relying upon "highly improper material" in awarding appellee summary judgment. Specifically, appellant contends that appellee attached reports, witness statements, and narrative summaries to his motion for summary judgment unauthorized by Civ.R. 56. For the following reasons, we disagree.
 {¶ 34} Appellant's argument hinges upon the denial of his motion to strike. An appellate court reviewing a trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. State v.Finnerty (1989), 45 Ohio St.3d 104, 107. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court. Id.
 {¶ 35} Civ.R. 56(C) sets forth the kind of evidence that may be considered in a motion for summary judgment: "* * * pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact * * *" Although the term "pleading" does not encompass attached exhibits, a party may properly introduce evidence not specifically authorized by Civ.R. 56(C) by incorporating it by reference through a properly framed affidavit pursuant to Civ.R. 56(E). Skidmore Assoc. Co. v.Southerland (1993), 89 Ohio App.3d 177, 179.
 {¶ 36} Pursuant to Civ.R. 56(E), an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). Appellee attached the affidavit of Wayne Baumgart, the city of Kirkland's chief of police. The affidavit indicates that Baumgart was the custodian of the reports and statements relating to the arrest of appellant that appellee sought to incorporate. Baumgart attested to the truth and accuracy of the documents, which were kept by the Kirtland Police Department in the normal and regular course of business. The Baumgart affidavit meets the requirements of Civ.R. 56(E). Thus, the lower court properly granted appellee leave to supplement his motion for summary judgment. As such, the court did not abuse its discretion in overruling appellant's motion to strike.
 {¶ 37} For the foregoing reasons, appellant's assignment of error is overruled and the judgment of the Lake County Court of Common Pleas is therefore affirmed.
Judgment affirmed.
O'Neill and Grendell, JJ., concur.
[1] According to appellant, appellee pursued prosecution notwithstanding the existence of highly exculpatory evidence, viz., the Barons' initial statements to the investigating officers that they were the parties assaulted. However, an officer is not obligated to perform an exhaustive investigation of a matter before filing charges and is not required to provide exculpatory evidence to the grand jury. See, e.g., Criss v.Kent (C.A. 6, 1988), 867 F.2d 259, 263.
[2] A city is a "Political Subdivision" as defined in R.C.2744.01(F). See, e.g., Smith v. Stormwater Mgmt. Div. (1996),111 Ohio App.3d 502 (city treated as political subdivision and granted immunity under R.C. 2744.03). R.C. 2744.03(A)(6)(b) provides:
"Defenses or immunities of subdivisions and employees
"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by an act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
"* * *
"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, * * * the employee is immune from liability unless one of the following applies:
"* * *
"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."