OPINION
{¶ 1} Plaintiff-appellant, Farrell G. Belknap, Jr. ("Belknap"), appeals from the November 8, 2002 judgment entry of the Portage County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Denise A. Moss ("Moss"). For the following reasons, we affirm, in part, and reverse, in part, the grant of summary judgment.
 {¶ 2} In 1998, Belknap and Moss began dating each other. In the spring of 2001, their romantic involvement came to an end. At this time, Moss was also engaged in a dispute with her ex-husband over the custody of their children. During the summer of 2001, Belknap and Moss had several confrontations resulting in four charges being filed against Belknap.
 {¶ 3} On June 20, 2001, Moss alleged that Belknap confronted her in the parking lot of the Freedom Inn, in Freedom, Ohio. In a statement to the police, Moss claimed that Belknap "pinned me against my car grabbing my arms [and] threaten[ing] me with him helping my ex-husband to get my kids from me." Moss stated that Belknap backed off when the bartender came outside. Moss signed a complaint against Belknap for menacing.
 {¶ 4} On June 26, 2001, Moss alleged Belknap appeared at her civil trial and told her that, if she did not drop the menacing charge, he would destroy her. That day, Moss signed a complaint against Belknap for intimidation.
 {¶ 5} On September 6, 2001, Belknap called the Garrettsville Police Department and reported that Moss was driving while intoxicated. The Garrettsville Police stopped Moss and performed field sobriety tests and the horizontal gaze nystagmus test. Moss successfully completed these tests. Thereafter, the Garrettsville Police charged Belknap with falsification.
 {¶ 6} On September 12, 2001, Moss signed a complaint against Belknap for menacing by stalking, alleging that Belknap had been calling, harassing, and following her. On September 26, 2001, a temporary protection order was issued against Belknap by the Ravenna Division of the Portage County Municipal Court. At the hearing held on the motion for the protection order, Moss testified that Belknap never expressly threatened her with physical harm or physically harmed her, except for a bruise when he grabbed her arm in the Freedom Inn parking lot. Moss also testified, however, that Belknap's actions had been very intimidating and had put her in fear for her safety and the safety of her children.
 {¶ 7} The charges against Belknap were consolidated for trial on February 11, 2002. Belknap was found guilty of falsification and disorderly conduct, a lesser included offense of menacing by stalking. Belknap was acquitted of the charges for menacing and intimidation.
 {¶ 8} On June 6, 2002, Belknap filed suit against Moss for malicious prosecution. On July 31, Moss filed a Civ.R. 12(B)(6) motion to dismiss the complaint for failing to state a claim upon which relief could be granted on the grounds that Belknap's complaint fails to allege an essential element of malicious prosecution. On September 24, 2002, the trial court converted the motion to dismiss to a motion for summary judgment. On November 8, 2002, the trial court granted summary judgment in Moss' favor. This appeal timely follows.
 {¶ 9} Belknap raises the following assignments of error:
 {¶ 10} "[1.] Appellant was denied a fair trial and substantial justice due to the ineffective assistance of counsel he had during the proceedings of this case.
 {¶ 11} "[2.] Appellant was denied [a] fair trial and substantial justice as a result of the trial court's wrongfully applying Ash v. Ash
(1995), [72] Ohio St.3d [520], resulting in a material fact of the case.
 {¶ 12} "[3.] Appellant was denied [a] fair trial and substantial justice due to the trial Court wrongfully holding that there were no genuine issues of material fact and thereby granting the summary judgment and further by not viewing the evidence in the light most favorable to the non-moving party.
 {¶ 13} "[4.] Appellant was denied [a] fair trial and substantial justice by the trial court abusing its discretion in weighing the evidence before it and rendering a decision that probable cause was existent for the Appellee to file the underlying criminal charges."
 {¶ 14} In his first assignment of error, Belknap claims he was denied effective assistance of counsel as guaranteed by the Fifth, Sixth, andFourteenth Amendments to the United States Constitution and by Sections10 and 16, Article I, of the Ohio Constitution. During the course of this litigation, Belknap's attorney withdrew from representation on August 26, 2002 and reappeared as counsel on September 23, 2002. During the course of this appeal, Belknap's attorney was suspended from the practice of law. 12/05/2003 Case Announcements, 2003-Ohio-6494 (suspending Toni Alice Marcheskie from the practice of law). Belknap has continued to represent himself pro se.
 {¶ 15} The right to representation by counsel provided by theSixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution only attaches in criminal matters and has no application to civil litigations. Sixth Amendment to the United States Constitution ("in all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense") (emphasis added); Section 10, Article I, Ohio Constitution ("the party accused
shall be allowed to appear and defend in person and with counsel") (emphasis added). "Unlike a criminal defendant, a civil litigant has no constitutional right to the effective assistance of counsel." Goldfussv. Davidson, 79 Ohio St.3d 116, 126, 1997-Ohio-401.
 {¶ 16} Although Belknap may have legitimate reasons to complain of the quality of representation he has received, these reasons are not legitimate grounds to appeal the trial court's decision. Belknap's first assignment of error is without merit.
 {¶ 17} Belknap's remaining assignments of error challenge the propriety of the trial court's grant of summary judgment. Since we review the grant of summary judgment de novo, we will address these arguments in a consolidated fashion.
 {¶ 18} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewed in a light most favorable to the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,369-370, 1998-Ohio-389 (citation omitted). A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Cty. Commrs. of SciotoCty. (1993), 87 Ohio App.3d 704, 711 (citation omitted). {¶ 19} "The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Trussellv. Gen. Motors Corp. (1990), 53 Ohio St.3d 142, at syllabus.
 {¶ 20} We will begin with the third element of the tort, i.e. that the prosecution terminate in favor of the accused. "A proceeding is `terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." Ash v. Ash, 72 Ohio St.3d 520,522, 1995-Ohio-107 (citation omitted). Thus, "the rule in Ohio is that * * * the prior termination of the criminal case is not favorable to the plaintiff * * * as a matter of law unless the charges are dismissed, the accused is acquitted at trial, or the accused is discharged from arrest."McGaha v. Murphy's Mart, Inc. (Dec. 30, 1983), 11th Dist. No. 1343, 1983 Ohio App. LEXIS 12512, at *2-*3, citing Douglas v. Allen (1897),56 Ohio St. 156, 159; Ash, 72 Ohio St.3d at 522 (citations omitted).
 {¶ 21} In granting summary judgment in favor of Moss, the trial court held that the proceedings had not terminated in Belknap's favor: "Where a criminal defendant is found guilty of at least one of the charges against him, the prosecution did not terminate in his favor." We disagree. The record indicates that the four charges against Belknap arose from separate and distinct incidents. The charges were based on four different complaints, assigned different case numbers, and, according to Belknap's affidavit, tried together for judicial convenience. Where the probable cause for the separate charges is unrelated, their ultimate disposition is similarly unrelated for the purposes of malicious prosecution. Since these charges were based on separate incidents, the fact that Belknap was convicted of some of the charges does not preclude him from raising malicious prosecution claims on the charges for which he was acquitted. Cf. Janetka v. Dabe (C.A.2, 1989), 892 F.2d 187, 190 ("courts have held that an acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge") (citations omitted); Salley v. Schmitz (March 28, 1995), N.D.Ill. No. 94 C 3448, 1995 U.S. Dist. LEXIS 3985, at *11 ("If this Court was to hold otherwise, then a defendant could tag on to a lesser charge, for which there was probable cause to proceed with prosecution, a greater charge, for which there was not probable cause to proceed with prosecution, and the plaintiff would be left with no recourse.").
 {¶ 22} Moss argues that summary judgment is appropriate because Belknap failed to allege a favorable outcome on two of the charges in his original complaint. Belknap's complaint alleges that "[t]hree of the said charges [against him] were either dismissed, found to be not guilty or lessened after tried to the court." Since Belknap "does not allege a termination favorable to the accused," Moss contends, he has failed to state a claim for malicious prosecution. We disagree.
 {¶ 23} Belknap sufficiently alleged the third element of a malicious prosecution claim by stating that some of the charges were dismissed and/or he was found not guilty of some of the charges. The Ohio Supreme Court observed in a similar situation: "Bearing in mind that Civ.R. 8(A)(1) only requires `a short and plain statement of the claim showing that the pleader is entitled to relief,' * * * it does not render [a] complaint fatally defective and subject to dismissal that each element of its cause of action was not set forth in the complaint with crystalline specificity." Border City Sav. Loan Ass'n v. Moan (1984),15 Ohio St.3d 65, 66.[1] Moreover, the trial court did not dismiss Belknap's case on the pleadings, but, treating Moss' motion as one for summary judgment, allowed the parties to introduce evidence pursuant to Civ.R. 56(E). Belknap's affidavit, attached to his memorandum in opposition to summary judgment, swears that he "was found innocent — and acquitted on two of the charges." Accordingly, we find that Belknap has satisfied the third element of the tort of malicious prosecution as it relates to the charges of which he was acquitted, i.e. menacing and intimidation.
 {¶ 24} The first two elements of the tort of malicious prosecution, malice and a lack of probable cause, are closely related. "Malice," for the purposes of malicious prosecution, "means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Criss v. Springfield Twp. (1990), 56 Ohio St.3d 82, 85
(citations omitted). "Probable cause" has been defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." Huber v.O'Neill (1981), 66 Ohio St.2d 28, 30, quoting Ash v. Marlow (1851),20 Ohio 119, paragraph one of the syllabus; Baryak v. Kirkland (2000),137 Ohio App.3d 704, 710-711 (citations omitted).
 {¶ 25} "In an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." Melanowskiv. Judy (1921), 102 Ohio St. 153, paragraph one of the syllabus. "While the existence of probable cause is usually a question for the jury, the trial court can decide the issue where the evidence is such that reasonable minds could come to but one conclusion." Baryak,137 Ohio App.3d at 711 (citation omitted); Baron v. Andolsek, 11th Dist. No. 2003-L-005, 2004-Ohio-1159, at ¶ 16 (citation omitted).
 {¶ 26} The crime of menacing is committed when one "knowingly cause[s] another to believe that the offender will cause physical harm to the person or property of the other person." R.C. 2903.22(A). Intimidation is committed when one "knowingly and by force, by unlawful threat of harm to any person or property, * * * shall attempt to influence, intimidate, or hinder a * * * witness in the discharge of the person's duty." R.C.2921.03(A).
 {¶ 27} The alleged menacing occurred early in the evening of June 20, 2001, when Belknap approached Moss at the Freedom Inn. In an affidavit, Moss claimed that Belknap began yelling at her inside the bar and followed her outside to her car, where he "grabbed my arm, turned me around, and pinned me between the door and the steering wheel." Moss further testified that Belknap let her go when someone else came out to the parking lot and that he left bruises on her arm. Moss claimed she was so terrified of Belknap that she spent the night at a friend's house.
 {¶ 28} Belknap does not dispute the substance of Moss' account, but argues that Moss was never "fearful of physical harm." According to Belknap, Moss filed the menacing charge against him in retaliation for his cooperation with Moss' ex-husband regarding a custodial dispute with Moss. For evidence, Belknap points to the fact that Moss did not contact police until the day after the confrontation at the Freedom Inn. In the statement Moss made to the police, she did not allege that Belknap threatened her with physical harm, but rather that "he threaten[ed] me with * * * helping my ex-husband to get my kids from me." At the hearing on Moss' motion for a protective order, Moss would not testify that Belknap had threatened to harm her or physically harmed her.
 {¶ 29} The alleged intimidation occurred six days later, on June 26, 2001, when Belknap was present at a civil proceeding involving Moss at the Portage County Courthouse. Moss testified, by affidavit, that Belknap "glared" at her during the proceedings and threatened her, in the courthouse hallway, that "if I didn't drop the menacing charge that he would destroy me." Belknap does not deny being at the courthouse on June 6, 2001. However, Belknap states in his affidavit that he had arranged to be there in advance (requesting leave from work) at Moss' request. Belknap denies ever mentioning the menacing charge and further claims that he was not aware that the complaint had been filed, as he was not arrested on the complaint until the evening of June 26, 2001.
 {¶ 30} Construing the evidence in a light most favorable to Belknap, we conclude that Belknap has failed to raise genuine issues of material fact whether Moss had probable cause for filing the complaint for menacing. The undisputed facts are that Belknap grabbed and restrained Moss in the Freedom Inn parking lot, leaving bruises on her arm. The fact that Belknap never threatened Moss with physical harm carries little weight where Belknap actually caused Moss physical harm. The statement in Belknap's affidavit that Moss "was never fearful of physical harm" and that her intentions were "malicious and retaliatory in nature" are conclusory assertions, unsupported by affirmative evidence. Given the undisputed facts about the incident in the Freedom Inn parking lot, Moss had probable cause to file the menacing charge against Belknap.
 {¶ 31} In regards to the intimidation charge, there is conflicting, but probative, evidence whether there was probable cause. Belknap claims not to have known that the menacing charge was filed, a claim that could be verified or disproved by evidence of when Belknap was served with the warrant. In the absence of this evidence, we must credit the evidence of Belknap's affidavit. Where the resolution of the probable cause issue depends on whether the trier of fact believes one party or the other, "summary disposition of a malicious prosecution claim is inappropriate."Poage v. Perry Twp. (Dec. 28, 2001), 7th Dist. No. 01CO 6, 2001 Ohio App. LEXIS 5954, at *18, quoting Norwell v. Cincinnati (1999),133 Ohio App.3d 790, 810.
 {¶ 32} For the foregoing reasons, the decision of the Portage County Court of Common Pleas granting summary judgment in favor of Moss is reversed as to Belknap's malicious prosecution claim arising out of the intimidation charge. In all other respects, the decision of the Portage County Court of Common Pleas is affirmed. This case is remanded for further proceedings consistent with this opinion.
Ford, P.J., Rice, J., concur.
[1] The complaint at issue in Border City, for malicious prosecution, alleged that appellees, by filing lawsuits against appellant, "intentionally inflicted harm upon * * * [appellant] without any excuse or justification, to * * * [appellant's] damage." 15 Ohio St.3d at 66.