OPINION *Page 2 
{¶ 1 Appellant, Mark Canfora, appeals from judgment entries of the Lake County Common Pleas Court. The judgment entries granted motions for summary judgment filed by defendants named in Canfora's lawsuit. Claims against one of the defendants, as well as counterclaims filed by the defendants, remain pending.
 {¶ 2} On October 19, 2003, Canfora confronted Gary Coiro during Sunday church services concerning an adulterous relationship that Coiro was having with Canfora's wife, Dena Canfora. Also present was Canfora's 16-year-old son, Mark Canfora II. Coiro had presided at the church service and was the senior pastor of the Willo-Hill Baptist Church in Kirtland, Ohio.
 {¶ 3} Canfora created a disturbance such that Ralph Dolence, chairman of the church board of trustees, made a 9-1-1 call to the Kirtland Police Department. Kirtland Police officers responded to the call. Mutual aid calls were placed by the Kirtland Police officers or the Department to the Lakeland Community College Police Department, the Willoughby Hills Police Department, and the Waite Hill Police Department, and officers from each of those departments responded.
 {¶ 4} Canfora was forcibly removed from the church by one or more of the police officers present. He was arrested at the scene and charged with misdemeanor charges of criminal trespass and resisting arrest. He was later charged with felony charges of breaking and entering and menacing by stalking, as well as misdemeanor charges of disrupting a lawful assembly and disorderly conduct. The felony charges were eventually dismissed as well as the misdemeanor charges of criminal trespass and disorderly conduct. Canfora was tried by a jury in the Willoughby Municipal Court *Page 3 
on the remaining misdemeanor charges of disrupting a lawful assembly and resisting arrest. The jury acquitted him of these charges in July 2004.
 {¶ 5} Canfora's son was also charged in juvenile court. All charges against him were dismissed by the juvenile court magistrate.
 {¶ 6} Canfora's first lawsuit was filed in Summit County on October 19, 2004. Following a motion for change of venue, that suit was transferred to Lake County, where Canfora dismissed it pursuant to Civ. R. 41(A).
 {¶ 7} On June 27, 2005, Canfora refiled his complaint in the Lake County Common Pleas Court, naming 16 parties as defendants. Included as defendants were the three municipalities and their police departments that responded to the church; the individual officers who responded; Lakeland Community College and its police department and the officer who responded; and Willo-Hill Baptist Church, Pastor Coiro, and Dolence. This case was identified as case No. 05 CV 001509. Joining with him in the case was his son, Mark Canfora II, who subsequently died on July 12, 2005, and whose claim has been abated by death.
 {¶ 8} Dena Canfora also filed a separate complaint against Gary Coiro and Willo-Hill Baptist Church in the Lake County Common Pleas Court. Her case was identified as case No. 05 CV 001916 and was consolidated with case No. 05 CV 001509, except that the trial court decided to bifurcate her case for trial purposes from that of Mark Canfora. Her case proceeded to a jury on April 3, 2006. The jury trial in her case resulted in defense verdicts for Coiro and Willo-Hill Baptist Church. No appeal has been pursued in case No. 05 CV 001916. *Page 4 
 {¶ 9} In the complaint in case No. 05 CV 0001509, Canfora asserted causes of action for false arrest and imprisonment; malicious prosecution; civil conspiracy; negligent hiring, retention, and training; and unconstitutional policies and practices.
 {¶ 10} Answers denying liability were filed by the 16 named defendants. In addition, State Farm, the insurer for Willo-Hill Baptist Church, intervened as a party and filed an answer.
 {¶ 11} Counterclaims for abuse of process were filed by Lakeland Community College, Officer Spotton of the Lakeland Community College Police Department, the Lakeland Community College Police Department, the city of Willoughby Hills, Officer Mullenax of the Willoughby Hills Police Department, and the Willoughby Hills Police Department.
 {¶ 12} Motions for summary judgment were filed by all defendants, save for State Farm. On February 7, 2006, the trial court entered summary judgment in favor of the village of Waite Hill and the Waite Hill Police Department. No appeal has been taken from that judgment entry.
 {¶ 13} In the first judgment entry being appealed by Canfora, dated March 30, 2006, the trial court dismissed the Lakeland Community College Police Department, because it was not an entity capable of being sued. It entered summary judgment in favor of Lakeland Community College on the basis of sovereign immunity. It also entered summary judgment in favor of Willo-Hill and Dolence on Canfora's claims for malicious prosecution and false arrest. It denied summary judgment to Willo-Hill and Dolence on Canfora's claims for civil conspiracy and loss of consortium. It also stated that the counterclaims remained pending. *Page 5 
 {¶ 14} The trial court then granted leave to Willo-Hill and Dolence to file an additional motion for summary judgment with respect to Canfora's claim for civil conspiracy.
 {¶ 15} The next judgment entry being appealed by Canfora is dated May 3, 2006. In this judgment entry the trial court dismissed the Kirtland Police Department, because it is not an entity that is capable of being sued. It entered summary judgment in favor of the city of Kirtland on the basis of sovereign immunity. It entered summary judgment in favor of all the police officers who responded to the 9-1-1 call and dismissed them from the lawsuit. It also entered summary judgment in favor of Willo-Hill and Dolence with respect to Canfora's civil conspiracy claim. Though the trial court did not specifically mention the loss of consortium claim against Willo-Hill and Dolence in dismissing this final claim against them, as it did in its March 30, 2006 judgment entry, by implication this claim was dismissed as it is derivative of a legally cognizable tort, and after this judgment entry no legally cognizable tort claim remains against Willo-Hill and Dolence.[1] Finally, it entered summary judgment in favor of Coiro on the civil conspiracy claim against him, but it denied summary judgment for the false arrest and malicious prosecution claims against Coiro. It also stated that all counterclaims remain pending.
 {¶ 16} The next judgment entry being appealed by Canfora was entered on May 8, 2006. This judgment entry was a restatement of the May 3, 2006 judgment entry, with additional language in deference to Civ. R. 54(B) that "there is no just cause for delay" and that all matters are stayed pending appeal. *Page 6 
 {¶ 17} Canfora timely appeals from the judgment entries of March 30, 2006, May 3, 2006, and May 8, 2006.
 {¶ 18} In addition to appellant's brief and reply brief, briefs have been filed by Appellees Officer Spotton (Lakeland Community College Police Department), Sergeant DeWitt (village of Waite Hill Police Department), Pastor Coiro, Willo-Hill Baptist Church and Ralph Dolence, the city of Kirtland, Kirtland Police Department, and Officers Phillips and Dubick (Kirtland Police Department).
 {¶ 19} Canfora has raised the following five assignments of error:
 {¶ 20} "[1.] The trial court committed prejudicial error as a matter of law in granting summary judgment dismissing the claims of false arrest, imprisonment, malicious prosecution and civil conspiracy against Defendant Ralph Dolence.
 {¶ 21} "[2.] The trial court committed prejudicial error as a matter of law in granting summary judgment dismissing all claims against Defendant Willo-Hill Baptist Church.
 {¶ 22} "[3.] The trial court committed prejudicial error as a matter of law in granting summary judgment dismissing all claims against Defendant Kirtland Police Officers, Cassia Phillips and Albert Dubick.
 {¶ 23} "[4.] The trial court committed prejudicial error as a matter of law in granting summary judgment dismissing all claims against Defendant Waite Hill Sergeant Keith DeWitt and Defendant Lakeland Community College Police Officer David Spotton. *Page 7 
 {¶ 24} "[5.] The trial court committed prejudicial error as a matter of law in granting summary judgment dismissing the claim of civil conspiracy against Gary Coiro."
 {¶ 25} In all five assignments of error, Canfora challenges the entries of summary judgment in favor of various defendants.
 {¶ 26} Pursuant to Civ. R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."
 {¶ 27} The court shall consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any."[2] Further, the party seeking summary judgment must point specifically to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.[3] In response, the nonmoving party must set forth specific facts which demonstrate that there is a genuine issue of material fact to be tried. The nonmoving party may not rest upon bare allegations or conclusory statements in his complaint.[4] *Page 8 
 {¶ 28} An additional consideration regarding summary judgment is that in considering whether to grant a motion for summary judgment, the trial court may not weigh the evidence and thereby enter summary judgment to the party with the stronger case: "such weighing of evidence is inappropriate in the summary judgment arena."[5]
 {¶ 29} A trial court's decision to grant a motion for summary judgment is reviewed by an appellate court under a de novo standard of review.[6] A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision.[7]
 {¶ 30} In his first assignment of error, Canfora argues that his claims against Dolence for false arrest, malicious prosecution, and civil conspiracy should not have been dismissed by the trial court's entry of summary judgment.
 {¶ 31} We shall first address Canfora's cause of action for false arrest and imprisonment.
 {¶ 32} "In its essential elements, a claim for false arrest is indistinguishable from a claim for false imprisonment in that each claim requires proof that one was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification."[8]
 {¶ 33} Canfora takes issue with that part of the trial court's judgment entry dated March 30, 2006, in which the trial court found that Dolence "neither requested that Mark Canfora be arrested nor did he supply false information to the police." The trial *Page 9 
court was relying on the decision from this court in Thomas v. Bank One,N.A., which held:
 {¶ 34} "`Where a private citizen merely summons an officer for assistance because of a disturbance and does not specifically request that the person be arrested nor supply false information to the police which causes the arrest, the citizen is not liable.'"[9]
 {¶ 35} In his deposition testimony, Dolence testified that he made the 9-1-1 call for the purpose of having the police physically remove Canfora from the church premises, because he feared that violence would ensue. Dolence testified as follows:
 {¶ 36} "[Q:] What happened then?
 {¶ 37} "[A:] Others stood up. People started standing up. Mr. Verdi [church member] went up and approached Mr. Canfora and Mr. Canfora said, `What do you want, to take a punch at me, Verdi?' He called him Verdi. `You want to punch me, Verdi? Go ahead, punch me, Verdi.' I went out of my seat, went in the back door and I went in the office and I called the Kirtland police.
 {¶ 38} "[Q:] Is that what prompted you to call the police was the remark about `punch me'?
 {¶ 39} "[A:] Absolutely.
 {¶ 40} "[Q:] Because you were afraid this was going to be a physical fight?
 {¶ 41} "[A:] Absolutely. People were standing up and this was going to escalate, in my opinion.
 {¶ 42} "[Q:] All right. So, what did you say to the police when you called them? *Page 10 
 {¶ 43} "[A:] I asked the police to respond. I said there was an unknown party in here getting disruptive and I was afraid this was going to escalate.
 {¶ 44} "[Q:] Anything else you recall telling the police?
 {¶ 45} "[A:] Yeah, to get there right away.
 {¶ 46} "[Q:] Did anybody ask you to call the police?
 {¶ 47} "[A:] Nobody asked me anything, no.
 {¶ 48} "[Q:] You just took it upon yourself?
 {¶ 49} "[A:] That was my duty, that was my job as chairman of the trustee board.
 {¶ 50} "[Q:] To protect the property of the church?
 {¶ 51} "[A:] To protect the people of the church."
 {¶ 52} Dolence did not specifically request that Canfora be arrested, but the police did, in fact, handcuff Canfora, then physically removed him and arrested him.
 {¶ 53} We agree with the trial court's assessment that Canfora adduced no evidence to prove that Dolence specifically requested that Canfora be arrested, nor did he prove that Dolence supplied false information to the police.
 {¶ 54} Canfora denies that he was committing violence when the police were called and argues that Dolence's statement to the police that he was being violent was false information that led to his false arrest. Canfora does not deny, however, that he and Verdi had an encounter in which a fistfight appeared to be imminent. The fact that a fight did not take place does not vitiate the fact that Dolence reasonably perceived that violence was about to ensue and that the police needed to be called to quell the disturbance that was about to take place. The trial court correctly held that there was *Page 11 
no genuine issue of material fact on Canfora's false arrest and false imprisonment claim.
 {¶ 55} For similar reasons, we hold that the trial court correctly ruled that summary judgment was appropriate for Canfora's malicious prosecution claim. On this claim, the trial court ruled as follows:
 {¶ 56} "The Court finds that there is no evidence demonstrating a lack of probable cause or malice on the part of * * * Dolence. As Plaintiff Mark Canfora has failed to show that * * * Dolence acted maliciously by calling the police and asking them to remove Plaintiff Mark Canfora, summary judgment shall be granted on this claim."
 {¶ 57} "The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.'"[10]
 {¶ 58} With regard to the third element of malicious prosecution, that being termination of the prosecution in favor of the accused, Canfora does satisfy this element. As for the other two elements, malice and lack of probable cause, this court has stated that these elements are "closely related."[11] They are related as follows:
 {¶ 59} "`In an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice.'[12] `While the existence of probable cause is *Page 12 
usually a question for the jury, the trial court can decide the issue where the evidence is such that reasonable minds could come to but one conclusion.'[13] "[14]
 {¶ 60} Canfora proceeded to a jury trial on the charges of disrupting a lawful assembly and resisting arrest and was acquitted on these charges. Canfora again argues that Dolence must have been acting maliciously in calling the police and advising the police that Canfora was committing violence, and that his call to the police resulted in these charges being brought and pursued against Canfora. As this court's just-quoted statement shows, Canfora's argument must necessarily be predicated on a lack of probable cause and, from what has already been discussed, reasonable minds can come to but one conclusion, that Dolence acted reasonably in calling the police, because of his perception that violence was about to ensue. There was no want of probable cause to call the police.
 {¶ 61} Canfora then argues that he had been invited to the church and that he had a right to be there. However, this argument goes to the criminal trespass charge, for which Canfora was not prosecuted. Further, while Dolence's 9-1-1 call may have been instrumental in Canfora's prosecution for disrupting a lawful assembly, it was not instrumental in his resisting arrest charge, because this latter charge was brought by the arresting police officers. Even if Canfora was lawfully on the church premises by virtue of an invitation from one of the church members, he did not have the right to resist arrest when asked to leave by the Kirtland Police.[15] Thus, there was no genuine issue of material fact with regard to Canfora's claim for malicious prosecution. *Page 13 
 {¶ 62} Finally, with regard to Canfora's claim against Dolence for civil conspiracy, he concedes the correctness of the trial court's entry of summary judgment on this claim insofar as it requires proof of an underlying unlawful act. Canfora argues, however, that, in the event his false arrest and malicious prosecution claims are reinstated, this would result in his civil conspiracy claim being reinstated. Because we hold that the false arrest and malicious prosecution claims are not viable, his civil conspiracy claim also fails. Thus, the first assignment of error is without merit.
 {¶ 63} In his second assignment of error, and related to the first assignment of error, Canfora argues that Willo-Hill should be held liable under a respondeat superior doctrine for its trustee's actions in calling the police. Thus, he argues that, owing to the actions of Trustee Dolence, the claims of false arrest, malicious prosecution, and civil conspiracy should be maintained against Willo-Hill and that the entry of summary judgment should be reversed as to Willo-Hill. For the reasons already discussed in the first assignment of error negating all such claims against Trustee Dolence, we decline to reverse the entry of summary judgment with regard to those claims against Willo-Hill.
 {¶ 64} Canfora then goes on in this second assignment of error to advance a new theory of liability against Willo-Hill. Under this new theory, Canfora argues that Willo-Hill is liable under a respondeat superior theory for false arrest and malicious prosecution owing to the actions of Pastor Coiro. As pointed out by Willo-Hill, this new theory of liability would have required evidence to be adduced by Canfora that Willo-Hill knew of Coiro's conduct prior to the October 19, 2003 incident, that it acquiesced in such conduct, and that the intentionally tortious conduct of Coiro can be imputed to the *Page 14 
church because it promoted the church's business. There was no such evidence adduced in the trial court. Therefore, because this theory of liability was not raised in the trial court, we decline to discuss it at this juncture. As this court has previously stated: "[i]t is well-settled in Ohio that issues not initially presented in the trial court may not be raised for the first time on appeal."[16]
 {¶ 65} The second assignment of error is without merit.
 {¶ 66} Canfora's third and fourth assignments of error deal with the individual liability of police officers who responded to the October 19, 2003 incident and shall be treated together. The officers are identified as Officers Phillips and Dubick of the Kirtland Police Department, Officer Spotton of the Lakeland Community College Police Department, and Sergeant DeWitt of the village of Waite Hill Police Department. In his complaint, Canfora alleged claims of false arrest and imprisonment, malicious prosecution, and civil conspiracy against all four officers. On March 6, 2006, Canfora and Sergeant DeWitt entered into a stipulation whereby the malicious prosecution and civil conspiracy claims were dismissed as to him, but the false arrest and imprisonment claim remained pending.
 {¶ 67} In his third and fourth assignments of error, Canfora argues that the trial court erred in entering summary judgment with respect to his claims against the four officers. He asserts that, contrary to the ruling of the trial court, these officers are liable for "wrongfully, recklessly and maliciously arresting, incarcerating and prosecuting [Canfora] without probable cause." *Page 15 
 {¶ 68} In this assertion, Canfora is invoking the exception to the rule that employees of a political subdivision are immune from liability unless the employees committed acts "with malicious purpose, in bad faith, or in a wanton or reckless manner."[17] He is also accepting the proposition that, not only must he show the ill will of the officers in order to respond to his burden under Civ. R. 56(C) to show that there is a genuine issue of material fact to be tried; he must also demonstrate that the officers did not have probable cause to arrest and prosecute him.[18]
 {¶ 69} The malicious, reckless, and wanton conduct on the part of the officers, Canfora argues, was his arrest based solely upon Trustee Dolence's statement that he wanted Canfora removed from the church. He further argues that the lack of probable cause stems from the facts that he was "not engaged in any threatening behavior" when the police officers arrived at the church, that "no one in the congregation corroborated Dolence's false report that Canfora had threatened violence," and he "had been invited to the service by a board member and had a right to be heard." Canfora asserts that malice on the part of the officers may be inferred from the lack of probable cause for the arrest.
 {¶ 70} On the first prong of Canfora's burden, he has failed to demonstrate that the officers acted with ill will in arresting him and, therefore, cannot overcome the general rule of immunity as it pertains to employees of a political subdivision. *Page 16 
 {¶ 71} "`Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified."[19]
 {¶ 72} "`Bad faith' involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another."[20]
 {¶ 73} "[W]anton misconduct [is] the failure to exercise any care whatsoever."[21]
 {¶ 74} Reckless misconduct refers to misconduct that "`creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make [the] conduct negligent.'"[22]
 {¶ 75} If wanton misconduct is to become a jury question, Canfora must prove a "`disposition to perversity on the part of the tortfeasor.' Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury."[23]
 {¶ 76} "`In the absence [of evidence] of this type of behavior * * * summary judgment [is] appropriate on this issue.'"[24]
 {¶ 77} Moreover, mere inferences that the four officers' conduct "rose to the crest of reckless, willful, or malicious conduct or that they acted in bad faith * * * are insufficient to defeat summary judgment" based upon statutory immunity.[25] *Page 17 
 {¶ 78} The record demonstrates that Canfora's attempt to adduce facts that would establish that there was a genuine issue of material fact to be tried fell woefully short. For example, he admits in his deposition testimony that he did not even speak to Officer Spotton during the incident, and that he has no facts to support his allegations against that officer other than the allegations in his complaint. Further, he has attached no affidavit to his response to any motion for summary judgment that would implicate Officers Phillips and Dubick with the necessary ill will to overcome statutory immunity. As for Sergeant DeWitt, Canfora stated that the sergeant grabbed him in a headlock, initiated his arrest, and forcibly removed him from the church. Therefore, except for Sergeant DeWitt, there are no facts adduced by Canfora that could be construed to implicate any of the officers with the ill will necessary to overcome statutory immunity.
 {¶ 79} With respect to the second prong of Canfora's burden to adduce facts that demonstrate a triable issue of fact, even if the facts adduced against Sergeant DeWitt could be construed as pointing to specific facts to demonstrate the ill will necessary to overcome statutory immunity, Canfora must still demonstrate that the officers, or any one of them, arrested him without probable cause. In this connection, we note that the fact that Canfora was later acquitted of disturbing a lawful assembly and resisting arrest does not affect the validity of the arrest.[26] *Page 18 
 {¶ 80} Canfora's assertion that the police officers lacked probable cause for arrest has already been addressed in our analysis under the first assignment of error. Therein, we stated that it was reasonable for Dolence to call the police, because he reasonably perceived that violence was about to ensue. Likewise, in these two assignments of error, we restate our conclusion that there was probable cause for Canfora's arrest.
 {¶ 81} For the foregoing reasons, the third and fourth assignments of error are without merit.
 {¶ 82} In his fifth assignment of error, as he argued previously in his first assignment of error, Canfora asserts that, if the false arrest and imprisonment or malicious prosecution claims are reinstated against any or all of the other defendants, the civil conspiracy claim against Coiro should be reinstated. Coiro recognizes that the civil conspiracy claim will not lie in the absence of an underlying unlawful act having been performed in concert with another person. However, in light of our analysis that the trial court properly entered summary judgment with regard to the false arrest and imprisonment and malicious prosecution claims as to all other defendants, there is no reason for this court to consider the viability of Canfora's civil conspiracy claim. Therefore, this assignment of error is without merit.
 {¶ 83} The judgment entries of March 30, 2006, May 3, 2006, and May 8, 2006 are affirmed.
DIANE V. GRENDELL, J., MARY JANE TRAPP, J., concur.
[1] Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 93.
[2] Civ. R. 56(C).
[3] Dresher v. Burt (1996), 75 Ohio St.3d 280, 292.
[4] Smith v. L.J. Lewis Ents., Inc., d.b.a. Action EmergencyAmbulance (Sept. 28, 2001), 11th Dist. No. 2000-T-0052, 2001 Ohio App. LEXIS 4413, at *13, quoting Civ. R. 56(E).
[5] State v. 1805 Wertz Ave., S.W. Canton, Ohio and $445.00 in U.S.Currency (June 2, 1997), 5th Dist. No. 1996CA00288, 1997 Ohio App. LEXIS 3272, at *7.
[6] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[7] (Citation omitted.) Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711.
[8] (Citations omitted.) Evans v. Smith (1994), 97 Ohio App.3d 59,70.
[9] Thomas v. Bank One, N.A. (Dec. 31, 1991), 11th Dist. No. 90-L-15-164, 1991 Ohio App. LEXIS 6415, at *4, quoting White v. StandardOil Co. (1984), 16 Ohio App.3d 21, 22-23.
[10] Belknap v. Moss, 11th Dist. No. 2002-P-0128, 2005-Ohio-1255, at ¶ 19, quoting Trussel v. General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus.
[11] Id. at ¶ 24.
[12] Melanowski v. Judy (1921), 102 Ohio St. 153, paragraph one of the syllabus.
[13] Baryak v. Kirkland (2000), 137 Ohio App.3d 704, 711 and Baron v.Andolsek, 11th Dist. No. 2003-L-005, 2004-Ohio-1159, at ¶ 16.
[14] Belknap v. Moss, 2005-Ohio-1255, at ¶ 25.
[15] Columbus v. Fraley (1975), 41 Ohio St.2d 173, paragraph three of the syllabus.
[16] (Citations omitted.) Lovas v. Mullett (June 29, 2001), 11th Dist. No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, at *8.
[17] R.C. 2744.03(A)(6)(b).
[18] Bertram v. Richards (1974), 49 Ohio App.2d 3, 5-6.
[19] Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 90.
[20] Id. at 90-91.
[21] (Citation omitted.) Fabrey v. McDonald Police Dept. (1994),70 Ohio St.3d 351, 356.
[22] Thompson v. McNeill (1990), 53 Ohio St.3d 102, 104-105, quoting 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500.
[23] (Internal citation omitted.) Fabrey v. McDonald PoliceDept., 70 Ohio St.3d at 356.
[24] Id., quoting Fabrey v. McDonald Police Dept, 11th Dist. No. 92-T-4691, 1993 Ohio App. LEXIS 787, at *9.
[25] Miskinis v. Chester Twp. Park Dist. (1996), 112 Ohio App.3d 466,470-471.
[26] See Michigan v. DeFillippo (1979), 443 U.S. 31, 36. *Page 1